**UNITED STATES of America. Appellee,**

v.

**Alex McCOY, Appellant.**

**No. 83–5011.**

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 1, 1983.

Decided Nov. 14, 1983.

Certiorari Denied April 16, 1984.
See 104 S.Ct. 1918.

Nancy L. Cook, Criminal Justice Clinic, Washington, D.C., and Norman N. Kinel, Third Year Law Student, for appellant.

Thomas M. Buchanan, Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

After being acquitted of first-degree murder as an aider and abettor of James Conley who was convicted of that offense (18 U.S.C. §§ 1111 and 2), defendant was indicted and convicted of the charge of accessory after the fact to the same murder (18 U.S.C. § 3). Defendant appeals contending that (1) the government's proof failed to show that the victim was dead at the time that defendant shielded Conley, (2) the government's proof failed to show that defendant knew that the victim was dead when he shielded Conley, (3) the district court erroneously failed to instruct the jury as to the elements of first-degree murder, (4) defendant's guarantee against double jeopardy was violated when he was tried and convicted as an accessory after the fact after his acquittal as an aider and abettor, (5) the district court improperly admitted into evidence a statement of the victim made immediately prior to his death, and (6) the district court improperly instructed the jury as to the elements of the crime of accessory after the fact.

We see no merit in any contention, and we affirm the judgment of the district court.

## I.

The charge against defendant arose from the murder of inmate Otis Peterson by inmate Conley at approximately 6:00 a.m. on February 2, 1982 at Lorton Reformatory. Peterson was stabbed to death at the right side exit door of Cellblock 4, Maximum Security Facility. Bleeding profusely, he managed to return to Cellblock 4 where he collapsed. When removed to the hospital a short time later, he was pronounced dead.

At the time defendant was in the area, free from his cell on the false representation that he was assigned to duty in the kitchen. By the time that Peterson had collapsed, defendant was observed wearing an over-sized full-length army coat with his arms extended, partially concealing Conley who was standing behind him. Defendant insistently demanded that a guard who was present permit defendant access to his cell, and when the guard complied, defendant, with coat outstretched still partially concealing Conley, and Conley moved toward defendant's cell. As they walked to the cell, defendant positioned himself between Conley and the guard for the entire passage.

## II.

Not all of defendant's contentions merit discussion, but we address those arising from the lack of proof of the exact moment of Peterson's death and the lack of proof that defendant knew the precise moment that death occurred. Defendant grounds his arguments about the insufficiency of the proof of his guilt and the incorrectness of the jury charge on the state common law rule described, for example, in *State v. Williams*, 229 N.C. 348, 49 S.E.2d 617, 618 (1948), that "a person cannot be convicted as an accessory after the fact to a murder ... when the aid was rendered after the mortal wound was given, but before death ensued, as a murder is not complete until the death results."

We decline, however, to apply such a restrictive rule. We think that fashioned

by the district judge in instructing the jury, namely that defendant "must have had knowledge that Mr. Peterson was dead or dying at the time of his decision", as a necessary element of guilt is both reasonable and correct. From the evidence that Peterson was lying in his cell, not moving and having bled profusely, we think that the jury could well conclude that defendant knew that Peterson was dead or dying at the time that he attempted to conceal Conley.

### III.

■ We address also defendant's contention that he was twice put in jeopardy.

*Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980) and *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) on which *Vitale* relies generally prescribe as the test for when multiple charges offend the guarantee against double jeopardy "whether each provision [under which an accused is charged] requires proof of a fact which the other does not." Ordinarily if there is a difference in the elements of proof, an accused may be prosecuted for both crimes without offending the guaranty against double jeopardy. In the instant case, the two charges are different because the aiding and abetting offense of which defendant was acquitted requires proof that defendant gave Conley aid *during* the commission of the murder, while the offense of accessory after the fact requires proof that defendant gave assistance to Conley *after* the commission of the crime. *See Government of Virgin Islands v. Aquino,* 378 F.2d 540, 553–54 (3 Cir.1967). To date the guarantee against double jeopardy has not been given a transactional interpretation, although in successive prosecutions it has been construed to prohibit a second prosecution based upon evidence adduced in a first prosecution when that evidence would support a conviction in both. *See Jordan v. Virginia,* 653 F.2d 870 (4 Cir.1980). And, of course, an acquittal in a first prosecution bars a second when the acquittal can only be explained as the resolution favorably to the accused of a necessary element of proof of the second charge. *See Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *United States v. Head,* 697 F.2d 1200 (4 Cir.1982).

This case is not one in which the extensions of the guaranty against double jeopardy apply. The government's case against McCoy as an aider and abettor was weak. The stronger evidence was with regard to what McCoy did to conceal Conley after Conley had stabbed Peterson. Although the stronger evidence was adduced at the first trial it could not have supported a conviction for aiding and abetting since it related to a time after the base crime had been committed. Thus, the verdict in the first case established only that aid in commission of the murder was not proved. The verdict did not decide that aid constituting McCoy an accessory after the fact was not thereafter given.

### IV.

■ We reject defendant's other contentions. *United States v. Musgrove,* 581 F.2d 406 (4 Cir.1978) holds that a policy of the Department of Justice to give transactional immunity in the usual case gives rise to no rights on the part of an accused to require application of the policy to him. We perceive no error in the district court's instructions to the jury nor in its admission of evidence. Moreover, any error in admitting the challenged hearsay was harmless since the same fact was proved by an eyewitness.

AFFIRMED.