Lamont E. HEARD, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–1485.

District of Columbia Court of Appeals.

Argued Feb. 6, 1996.

Decided Dec. 12, 1996.

---

Richard Greenlee, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on brief, for appellant.

Leanne Shaltis Fallin, Assistant United States Attorney, with whom Eric H. Holder,

Jr., United States Attorney, John R. Fisher and Roy W. McLeese, III, Assistant United States Attorneys, were on brief, for appellee.

Before FERREN, STEADMAN, and RUIZ, Associate Judges.

RUIZ, Associate Judge:

Heard was convicted of two counts of being an accessory after the fact to assault with intent to kill while armed and one count of being an accessory after the fact to possession of a firearm during a crime of violence, for his role in a shooting that injured one man and killed another on December 19, 1992. He received two concurrent prison terms of six and two thirds to twenty years on each of the accessory after the fact to assault with intent to kill while armed counts and a consecutive prison term of thirty to ninety months for being an accessory after the fact to possession of a firearm during a crime of violence.

Heard presents two issues on appeal: 1) that the three accessory after the fact convictions should merge into one, and 2) that this court should remand this case for a new sentence not to exceed seven and one half years. We conclude that the two counts of accessory after the fact to assault with intent to kill while armed and the one count of accessory after the fact to possession of a firearm during a crime of violence do not merge and that Heard's sentence is proper.

## I.

On December 19, 1992, Heard was driving a vehicle containing two passengers, Patrick Baucum and Thomas Johnson, in the Southeast section of Washington D.C. At approximately 3:00 in the afternoon Heard approached the intersection of Alabama Avenue and Naylor Road, S.E. Stopped at a red light at that intersection was a car driven by Willie Washington and occupied by his uncle, Earl Nelson. While the light was still red, Heard pulled his vehicle up beside the vehicle driven by Washington. Johnson, who was sitting in the front passenger seat, and Baucum, who was sitting in the rear passenger seat, pulled out guns and fired at least

eight shots into Washington's vehicle. After Baucum and Johnson finished shooting, Heard remained stopped at the light until it turned green, and then proceeded through the intersection at a normal rate of speed. These events were witnessed by an off-duty officer. Heard, Baucum and Johnson were subsequently apprehended and charged in connection with this shooting.[1]

## II.

Heard argues that his three accessory after the fact convictions should merge because they are based on the same conduct. He contends that the accessory after the fact statute is ambiguous as to whether multiple punishments for the same act of accessoryship are permitted. Because the statute is ambiguous and because his convictions are based on one act of driving the getaway car, Heard contends that the rule of lenity should be applied and his convictions should merge.

 Under the rule of lenity, when it is unclear whether the legislature intended to impose multiple punishments, multiple convictions under the same statute that are based on the same act will merge. *Ladner v. United States,* 358 U.S. 169, 177–78, 79 S.Ct. 209, 213–14, 3 L.Ed.2d 199 (1958) (holding that injuring two police officers with a single shot gun blast was one offense); *Bell v. United States,* 349 U.S. 81, 83–84, 75 S.Ct. 620, 622–23, 99 L.Ed. 905 (1955) (holding that transporting two women in interstate commerce for an immoral purpose in violation of the Mann Act, 18 U.S.C. § 2421, was a single offense); *Morris v. United States,* 622 A.2d 1116, 1129, *cert. denied,* 510 U.S. 899, 114 S.Ct. 270, 126 L.Ed.2d 221 (1993) (holding that the attempted armed robbery and the assault with a dangerous weapon—a gun—committed against the same victim were offenses in violation of the same statute, D.C.Code § 22–3204 (1996); therefore, they merged); *Bean v. United States,* 576 A.2d 187, 189–91 (D.C.1990) (holding that simultaneous possession of a sawed-off .22 caliber rifle and a knife constituted one violation of D.C.Code § 22–3204); *Cormier v. United States,* 137 A.2d 212, 216–17 (D.C.1957) (hold-

---

1. Baucum and Johnson were charged and tried separately for their role in these events.

ing that simultaneous possession of two pistols was one offense); *see Joiner v. United States*, 585 A.2d 176, 178 (D.C.1991) (holding that firing a single shot in the direction of seven men was one offense). The rule of lenity is reserved for situations where "the language and structure, legislative history, and motivating policies" do not remove any reasonable doubt as to the scope of a statute. *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (quoting *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980); *see also United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (stating that the court should apply lenity in cases when, after exhausting all helpful materials, the statute is still ambiguous)). Thus, we look to the "language and structure, legislative history and motivating policies" of the statute to see if it authorizes multiple punishments. *Moskal, supra*, 498 U.S. at 108, 111 S.Ct. at 465.

The District's accessory after the fact statute provides:

> Whoever shall be convicted of being an accessory after the fact to any crime punishable by death shall be punished by imprisonment for not more than 20 years. Whoever shall be convicted of being [an] accessory after the fact to any crime punishable by imprisonment shall be punished by a fine or imprisonment, or both, as the case may be, not more than [one-half] the maximum fine or imprisonment, or both, to which the principal offender may be subjected.

D.C.Code § 22–106 (1996).

The District's accessory after the fact statute, which provides only the penalties authorized for persons convicted as accessories, was enacted by Congress in 1901 as part of a comprehensive code of law for the District of Columbia. *See* ch. 854, sec. 909, 31 Stat. 1337 (1901). Because the District's accessory after the fact statute provides only for punishment, we look to the common law for an understanding of the substantive definition of the offense. *Clark v. United States*, 418 A.2d 1059, 1061 (D.C.1980); *Butler v. United States*, 481 A.2d 431, 442–43 (D.C. 1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct.

1398, 84 L.Ed.2d 786 (1985). Section one of the 1901 Code provides that, "[t]he common law, all British statutes in force in Maryland ... at the date of the passage of this act shall remain in force except in so far as the same are inconsistent with or are replaced by ... some provision of this code". D.C.Code § 49–301 (1990). The Code provision dealing with accessories after the fact has remained unchanged since 1901. Thus, in the absence of governing case law in our jurisdiction, we look to the common law of Maryland for the substantive definition of the crime of accessory after the fact. *O'Connor v. United States*, 399 A.2d 21, 25 (D.C.1979).

"[T]his court has, customarily, looked to [post–1801] decisions of the Court of Appeals of Maryland for assistance ... in interpreting the law which was inherited from that State...." *Brooks v. United States*, 655 A.2d 844, 846 n. 6 (D.C.1995) (quoting *Watkins v. Rives*, 75 U.S.App. D.C. 109, 111, 125 F.2d 33, 35 (1941)). Accessory after the fact is a common law offense in Maryland and it has retained, almost without change, the characteristics of the common law. *Lewis v. State*, 285 Md. 705, 404 A.2d 1073, 1075 (1979) (quoting *State v. Ward*, 284 Md. 189, 396 A.2d 1041, 1043 (1978) ("Maryland is one of the few, if not the only state, which has retained [the common law doctrine of accessoryship] in virtually the same form as it existed at the time of William Blackstone in the 18th century....")). Because to interpret the legislative intent behind D.C.Code § 22–106 we need to look to the Maryland common law of accessory after the fact, and Maryland common law retains the common law incidents of the offense of an accessory after the fact, we turn to an analysis of the common law more generally to discern the principles which underlie the offense of accessory after the fact as it exists in the District of Columbia through the Maryland common law.

At common law, an accessory after the fact was one who knew of the commission of the felony by the other person, and hindered the felon's apprehension, conviction or punishment. 2 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 6.9(a) (1986). An understanding of the

common law theory of accessories to a crime "requires full acceptance of the concept of one crime" committed by the principal which forms the basis of guilt for the accessories. Rollin M. Perkins, *Parties to Crime*, 89 U. PA.L.REV. 581, 586 (1941). "The common law rested on the notion that one who helps an offender avoid justice becomes in some sense an accomplice in the original crime." MODEL PENAL CODE § 242.3 cmt. 1 (1980). At common law the liability of the accessory was derived from that of the principal offender. *Id.* According to one commentator:

> [Under] the common-law theory the accessory after the fact was spoken of also as guilty of the original felony. His assistance to the known felon related back to the crime itself, it was said, and tainted him with guilt of that very offense, and subjected him to the same penalty except as the rigor of this rule was modified by statute.

ROLLIN M. PERKINS, PERKINS ON CRIMINAL LAW, 650 (2d ed.1969) (footnotes omitted); *see also,* GLANVILLE WILLIAMS, CRIMINAL LAW: THE GENERAL PART § 138, at 410 (2d ed. 1961) ("The crime of receiving felons was anciently regarded as of equal gravity with the felony; the receiver became tainted with the felony."). At common law, therefore, one could not determine the culpability of the accessory by looking at his or her conduct alone. To determine the culpability of the accessory, the criminal acts of the principal had to be consulted. The gravity of the crimes of the accessory was inextricably linked to the crimes of the principal.

■ The accessory statute enacted by Congress modified the common law by lowering the punishment of the accessory to one half of the maximum authorized penalty of the principal. The question in determining whether multiple convictions of accessory after the fact are permitted, is whether by this statutory modification the Congress intended to retain or dispense with the common law notion of derivative culpability for accessories that would allow for multiple convictions for an accessory on a par with multiple convictions for the principal. We conclude that the District's accessory statute did not break the link between accessory and principal, but merely reduced the level of punishment of the accessory in relation to the principal.

■ The plain language of the statute makes it clear that the common law link between the accessory and the principal remains intact. "Whoever shall be convicted of being an accessory after the fact ... shall be punished by a fine or imprisonment ... not more than one-half the maximum ... *to which the principal offender may be subjected.*" D.C.Code § 22–106 (emphasis added). By its express terms, the statute makes the accessory's punishment contingent on that imposed on the principal offender. Because the statute clearly ties the punishment of the accessory to the underlying crime committed by the principal and because under the common law principles of accessory after the fact made applicable by D.C.Code § 49–301 the accessory is considered to be an accomplice of the principal, we conclude that multiple convictions of the accessory based on a single course of conduct can be obtained when one act forms, or would form, the basis for convicting the principal of multiple violations of the same statute.[2]

■ Concluding that under the statute multiple convictions for accessory after the fact based upon the same act are lawful does not by itself decide the question in this case. Because the theoretical underpinning of the common law notion of accessory after the fact is derivative liability, MODEL PENAL CODE, *supra,* at § 242.3, the accessory's liability must have a basis in the liability of the principal. Therefore, when the convictions of

---

**2.** Appellant argues that "accessory after the fact is a form of obstructing justice," a crime against the government, not against individuals. While this view is correct in jurisdictions which have broken with the common law by statute, it is not true in this jurisdiction. *Cf.* CAL.PENAL CODE § 33 (West 1988) (California's accessory after the fact statute provides that except in cases where another statute authorizes a different punishment, accessories are subject only to a fine not exceeding five thousand dollars and/or imprisonment not exceeding one year). *See People v. Perryman,* 188 Cal.App.3d 1546, 234 Cal.Rptr. 181, 183 (1987) (holding that "[t]he crime of accessory is separate and distinct from the underlying felony ... the defendant ... may be charged with only one act of being an accessory after the fact").

the principal merge, the convictions of the accessory must also merge. When the convictions of the principal do not merge, neither will the convictions of the accessory merge.

■ In this case, the defendant has been convicted of three counts of accessory after the fact: two counts of accessory after the fact to assault with intent to kill while armed and one count of accessory after the fact to possession of a firearm during a crime of violence. Whether these convictions merge, depends on whether the underlying offenses of the principal merge.

This court has already ruled that multiple convictions for assault with intent to kill involving more than one victim do not merge. *See Gray v. United States*, 585 A.2d 164, 165 (D.C.1991) (ruling that three assault with intent to kill convictions did not merge where multiple shots were fired in the direction of three children); *accord Hanna v. United States*, 666 A.2d 845, 855 (D.C.1995) (stating "[c]rimes do not merge if they are perpetrated against different victims"). Because the two accessory convictions for assault with intent to kill while armed involved multiple shots that injured two distinct victims, they do not merge. We also conclude that the accessory to possession of a firearm during a crime of violence charge does not merge with either of the accessory to assault with intent to kill while armed convictions as this court has already decided that issue with respect to the principal's offense. *Little v. United States*, 613 A.2d 880, 881 (D.C.1992) (conviction for possession of firearm during a crime of violence does not merge with conviction for assault with intent to kill while armed); *see Hanna, supra,* 666 A.2d at 854-58 (conviction for possession of a firearm during a

crime of violence does not merge with conviction for assault with intent to kill). Because none of the underlying offenses merge, the accessory convictions premised upon them also do not merge.

## III.

Heard claims that his sentence of six and two-thirds to twenty years for each of his two convictions as accessory after the fact to assault with intent to kill while armed is not lawful under D.C.Code § 22–106. To determine the appropriate sentence we first look to the language of the statute.[3] D.C.Code § 22–106 prescribes two methods for determining what sentence is appropriate for accessories after the fact. For accessories to "crimes punishable by death" the punishment is not more than twenty years. For accessories to all other crimes, the statute authorizes punishment of "not more than one-half the maximum . . . to which the principal offender may be subjected." The statute does not directly address what punishment is appropriate for accessories to crimes punishable by life imprisonment.

Heard argues that because D.C.Code § 22–106 does not provide a specific penalty for an accessory after the fact to an underlying offense which is punishable by life imprisonment[4] and because it is "impossible" to calculate one-half of a life sentence, he should be sentenced according to the lesser-included offense of accessory after the fact to assault with intent to kill, which carries a maximum sentence of fifteen years. Thus, appellant contends that the maximum sentence he can receive is one half of fifteen years, or seven and one-half years for each conviction of D.C.Code § 22–106.[5]

3. The text of the statute appears, *supra* at [——].

4. Assault with intent to kill while armed may be punishable by a life sentence, D.C.Code §§ 22–501, –3202 (1996).

5. We reject this argument because it would lead to situations where the severity of the crime and the punishment would be grossly disproportionate to each other. *See Haney v. United States,* 473 A.2d 393, 395 (D.C.1984) (concluding that "[t]here is *no logical or rational reason to assume that*" the legislature intended for a defendant convicted of a less serious offense to receive

more punishment than a defendant convicted of a more serious offense).

A comparison of how accessories for different underlying offenses would be punished under appellant's theory illustrates the point. The offense of kidnapping is punishable by life imprisonment and has only one lesser-included offense, attempted kidnapping, which is punishable by up to five years imprisonment, a $5,000 fine, or both. D.C.Code § 22–103, 23–1331(4) (1996). Under appellant's view, the maximum penalty for an accessory after the fact to attempted kidnapping would be ten to thirty months. An

The government, relying on *Butler v. United States*, 481 A.2d 431 (D.C.1984), argues that a twenty year sentence was proper under D.C.Code § 22–106 because assault with intent to kill while armed should be considered a crime punishable by death for the purposes of the accessory after the fact statute. The question in *Butler* was whether the maximum twenty year sentence prescribed under D.C.Code § 22–106 for capital crimes was appropriate for an accessory after the fact to first-degree murder, after capital punishment had been eliminated in the District of Columbia. *Id.* at 447. We held in *Butler*, "the phrase 'crime punishable by death' in § 22–106 is still viable as a shorthand reference to a category of particularly serious offenses in which first-degree murder is included." *Id.*[6]

■ We disagree that assault with intent to kill while armed is included in the "category of particularly serious offenses" which include first-degree murder. First, and most importantly, assault with intent to kill while armed, unlike first-degree murder, has never been punishable by death. In addition, unlike assault with intent to kill while armed which is punishable by a life sentence, first-degree murder is punishable by an even more severe sentence, punishment of life imprisonment without parole. D.C.Code § 22–2404.1 (1996). Thus, the legislature continues to provide a lesser maximum punishment for assault with intent to kill while armed than for first-degree murder, indicating a legislative determination that assault with intent to kill while armed is not in the same

category as first-degree murder. Moreover, assault with intent to kill while armed is significantly different from first-degree murder in that the government does not have to prove malice. *Logan v. United States*, 483 A.2d 664, 672 n. 10 (D.C.1984). We find without merit the government's argument that assault with intent to kill while armed is in the same category of serious offenses as first-degree murder and do not add this offense to the list of crimes that can be considered for the purposes of D.C.Code § 22–106, a "crime punishable by death."

We also disagree with Heard's contention that his sentence was improperly calculated under the accessory after the fact statute, which authorizes punishment of the accessory to "not more than one-half the maximum ... to which the principal offender may be subjected". D.C.Code § 22–106. Heard's argument is that because we do not know the exact duration of life imprisonment, it is impossible to determine one half of a life sentence. That argument, though attractive in theory, fails when applied to particular cases. Courts often impose terms of less than life when life imprisonment is permitted under the given statute. In *Verrett v. Stempson*, 643 A.2d 902, *vacating as moot* 623 A.2d 120 (D.C.1993), the appellant was convicted of one count of assault with intent to kill while armed and one count of assault with intent to commit robbery while armed. Both are punishable by life imprisonment. D.C.Code § 22–3202 (1996). Verrett received a sentence of twelve to thirty-six years for each count. *Id.* In *Arthur v. United States*, 602 A.2d 174, 175 (D.C.1992), the appellant was

accessory to possession of cocaine with intent to distribute, a less serious offense, would be subject to a sentence of up to five to fifteen years in prison. D.C.Code ·§§ 22–106 (1996), 33–541(a)(2)(A) (1993).

Under the appellant's analysis, the accessory to the more serious crime of kidnapping would receive one-sixth the sentence of the accessory to the less serious crime of possession of cocaine with intent to distribute. Since this result leads to consequences that clearly could not have been the intent of the legislature, we reject appellant's interpretation of D.C.Code § 22–106.

**6.** In *Butler, supra,* the Court was trying to determine if first-degree murder could still be considered a "crime punishable by death" even after the sentence for first-degree murder was reduced to life imprisonment. The court noted that the

only reason for the downgrading of the penalty for the offense was the invalidation of the District's death penalty law by *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), not a legislative determination. *Butler, supra,* 481 A.2d at 447. The court then contrasted rape and kidnapping from first-degree murder, noting that both rape and kidnapping offenses had been downgraded by Congress from capital offenses while the death penalty was still available in the District. *Id.* at 448. The court concluded that in the case of first-degree murder, on the other hand, the reduction of punishment from the death penalty to life imprisonment did not signify that Congress was "downgrading ... the status of this crime as the most serious of offenses". *Id.*

convicted of assault with intent to kill while armed, punishable by life imprisonment, and was sentenced to seven to thirty years in prison. *Id.* In *Sterling v. United States,* 515 A.2d 433, 434 (D.C.1986) (footnote omitted), the "[a]ppellant pleaded guilty to second-degree murder and was sentenced to a term of thirteen to forty-five years in prison." *See also Brown v. United States,* 474 A.2d 161, 164 (D.C.1984) (holding that appellant's sentence of 10–30 years did not exceed the maximum punishment of life imprisonment).

The above cases illustrate that even though a life sentence may be theoretically indeterminate, the actual determinate sentences imposed in cases where life sentences are permissible, such as *Verrett, supra,* (twelve to thirty-six years), *Arthur, supra,* (seven to thirty years), *Sterling, supra,* (thirteen to forty-five years) and *Brown, supra,* (ten to thirty years) allow us to calculate one half of sentences which are *less* than life. Heard was sentenced to six and two-thirds to twenty years for each count of assault with intent to kill while armed. Twenty years is less than half of the forty-five years given in *Sterling, supra,* in a case in which life imprisonment was permissible. Since forty-five years is less than a life sentence, and twenty years is less than half of forty-five years, Heard's twenty-year maximum sentence is necessarily less than half the maximum sentence to which the principal may be sentenced.

We also note that the sentencing provisions in D.C.Code § 24–203 (1996), which provide, in the case of felony convictions, that the "minimum period not exceed[ing] one-third of the maximum sentence imposed," also provide that "[w]here the maximum sentence imposed is life imprisonment, a minimum sentence shall be imposed which shall not exceed 15 years imprisonment." The

logic of the statute, that 15 years is one-third the maximum of life, suggests that "life" is assumed to be equal to forty-five years.

We therefore conclude that the appellant's sentence of twenty years for being an accessory after the fact to assault with intent kill while armed is not improper.[7]

STEADMAN, Associate Judge, concurring:

I agree entirely with Parts I and II of Judge Ruiz's opinion and with the result in part III. However, I would rely on the first sentence of D.C.Code § 22–106 to determine the maximum sentence that may be imposed for a conviction under that provision, rather than the second sentence utilized by the majority.

In *Butler v. United States,* 481 A.2d 431, 449 (D.C.1984), we held that the phrase "crime punishable by death" in the first sentence of § 22–106 "is a legitimate shorthand reference to particularly serious offenses among which first-degree murder predominantly ranks." It seems to me that by designating any particular crime as one for which a life sentence is permitted, the legislature has necessarily designated that crime as "particularly serious." [1]

The second sentence of § 22–106 can be applied by its terms only where it is possible to calculate one-half of the "maximum . . . imprisonment . . . to which the principal offender may be subjected," and necessarily requires a maximum imprisonment that can be numerically expressed. If possible intermediate punishments, such as the sixty years for second-degree murder imposed in *Haney v. United States,* 473 A.2d 393 (D.C.1984), are used as a "maximum," it not only distorts the procedures set forth in the second sen-

---

7. This case does not require, and we do not reach, the question whether the District's accessory after the fact statute imposes a twenty year maximum sentence on accessories after the fact.

1. I do not think that the fact that first-degree murder is *now* subject to life imprisonment without the possibility of parole under D.C.Code § 22–2404.1 is particularly meaningful. That provision was enacted in 1992, prior to which the maximum punishment had been life imprisonment under D.C.Code § 22–2404 ever since

the elimination of the death penalty in 1972. Assault with intent to kill while armed has been punishable by life imprisonment since 1967. *See* D.C.Code § 22–3202 (1968 Supp.). Thus from 1972 until 1992, the two crimes were subject to the same maximum punishment. The recent life without parole statute, although it applies only to first-degree murder, does not constitute a legislative determination that the crime of AWIKWA is any less serious than it had been before.

tence but also could result in situations where an accessory to a lesser offense could receive a longer sentence than an accessory to first-degree murder. This would be the "absurd result" that we eschewed in *Butler*.

It is true, of course, that the twenty-year limit set forth in the first sentence can be construed as a "cap" on any period of imprisonment that may be imposed by application of the formula in the second sentence. Indeed, if the majority's approach is correct, I think such a construction is mandatory to avoid the "absurd result" already mentioned. To achieve this result, however, requires distortion of both sentences of § 22–106. It seems to me that a more straightforward interpretation of the "legislative intent" that we sought to effectuate in *Butler* is simply to treat the first sentence as applying to all offenses subject to life imprisonment, which (as was the case with the death penalty) perforce provide for no numerical maximum.

