Michael K. LITTLE, Appellant,

v.

UNITED STATES, Appellee.

David E. BAILEY, Jr., Appellant,

v.

UNITED STATES, Appellee.

Nos. 94–CF–1379, 94–CF–1406.

District of Columbia Court of Appeals.

Argued Nov. 13, 1997.

Decided March 12, 1998.

Mindy A. Daniels, Washington, DC, appointed by the court, for appellant Michael K. Little.

William S. Rhyne, Washington, DC, appointed by the court, for appellant David E. Bailey, Jr.

D. Ames Jeffress, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, at the time the brief was filed, and John R. Fisher and Roy W. McLeese, III, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

SCHWELB, Associate Judge:

David E. Bailey, Jr. was convicted by a jury of two counts of second-degree murder while armed, in violation of D.C.Code §§ 22–2403, –3202 (1996). Bailey was also found guilty of possession of a firearm during a crime of violence (PFCV), § 22–3204(b), and of two counts of carrying a pistol without a license (CPWOL), § 22–3204(a). Bailey's co-defendant, Michael K. Little, was convicted

of two counts of being an accessory after the fact (AAF) to second-degree murder, § 22–106, and of two counts of CPWOL. Both defendants have appealed from their convictions, and their appeals have been consolidated by order of this court.

Appellate counsel have presented a number of contentions for our consideration, but the only issue requiring plenary discussion is whether the trial judge correctly ruled that Little could properly be convicted of being an accessory after the fact to murder where both decedents were dying, but not yet dead, at the time Little rendered assistance to the murderer. We answer that question in the negative, and therefore conclude that Little's accessoryship convictions must be reduced from AAF to second-degree murder to the lesser-included offense of AAF to assault with a dangerous weapon (ADW). In addition, the government concedes, and we hold, that each appellant's two CPWOL convictions merge with one another. In all other respects, we affirm.

## I.

### THE EVIDENCE

On January 23, 1994, a double-homicide occurred outside the Mirage, a nightclub located in southeast Washington, D.C. The slayings followed a dispute between two rival groups of young men which had begun inside the Mirage earlier that evening. One of the factions, which we shall call the "Bailey group," consisted of the two appellants, Bailey and Little, and two or three of their friends. The Bailey group's adversaries, the "Morton group," included Harold "Peanut" Morton, decedents Gregory Kennedy and Kevin Harrell, and two or three other individuals.

The unpleasantness between the two groups apparently began when Bailey and Morton exchanged angry words which soon escalated to blows.[1] Security guards at the Mirage broke up the fracas and escorted Bailey out of the club. The other members of the Bailey group promptly joined Bailey outside. Little and Bailey then walked to a red Nissan 300 ZX which Little had borrowed and which was parked nearby. Little took his seat behind the steering wheel. Bailey sat in the front passenger seat. Meanwhile, Kennedy and Harrell were leaving the Mirage with the rest of the Morton group a short distance behind them.

Prosecution witnesses testified that Little drove the car down the street to the corner at which Kennedy and Harrell were now standing. Bailey extended his arm out of the window and fired at the two men at close range. Immediately after the shots were fired, the car "skidded out" as Little sped off.

Each of the victims was shot three times. Harrell was struck once in the head, once in the heart and lung region, and once in the abdomen. His head snapped back as a result of the impact of the bullets, and he immediately fell to the pavement. Two bullets from Bailey's pistol struck Kennedy in the back, and a third shot hit his hand. According to the testimony, Kennedy ran down the street with blood "gushing" from his mouth, and he collapsed a short time later.

There was no evidence that either victim died before Little drove away. On the contrary, one prosecution witness testified that after the appellants departed, he saw both victims "squirming" and "shaking" on the ground. It therefore appears to be undisputed that both men were still alive when Little initiated his alleged accessorial conduct by transporting the shooter, Bailey, away from the scene.

Officers Brian Carroll and William Chapman of the Metropolitan Police Department were on patrol when they monitored a radio lookout for a red 300 ZX. Four or five minutes later, they saw appellants' car near Interstate 395 and began to follow it. Little, who had apparently noticed the officers, increased his speed and ran through a red light. A lengthy high-speed chase ensued,

---

1. There was conflicting evidence regarding the cause of the outbreak of hostilities. A prosecution witness testified that an unfriendly remark by Bailey precipitated the encounter. A defense witness insisted, on the other hand, that members of the Morton group instigated the altercation, and that one of them said: "Fuck it, we're going to spray all these niggers when they come outside."

and there was testimony that Bailey exchanged gunfire with the officers. The pursuit ended when Little was cornered on a dead-end street. During the course of the chase, Bailey threw a 9mm pistol and a .45-caliber handgun out of the car window. The two weapons were subsequently recovered by the police.

Bailey testified in his own defense. He asserted that he had shot the decedents in self-defense. Bailey claimed that at the conclusion of the affray inside the Mirage, he heard a member of the Morton group suggest to "Peanut" Morton that they "handle this outside." See also note 1, *supra*. Bailey understood from his adversaries' remarks that once he was on the street, members of the Morton group would try to shoot him. According to Bailey, his fear for his safety became even more pronounced after both groups had left the club. He claimed, contrary to the prosecution testimony, that two "dudes" identified with the Morton group ran towards the 300 ZX while the car was standing still. Bailey testified that one of the "dudes" yelled: "[T]here they go right there, get the guns ... let's get them." Bailey claimed that he then saw the "big dude fiddling with something" that he (Bailey) believed to be a handgun. Apprehending that he was about to be shot, Bailey took preemptive action and fired at the two "dudes," who turned out to be Harrell and Kennedy.[2]

Bailey also testified that the two handguns recovered by the police belonged to him, and that Little had no connection with them. He denied shooting at the officers during the chase. Bailey claimed that he threw the weapons out of the car window in order to induce the officers to stop firing at him and at Little.[3]

## II.

### THE ACCESSORY AFTER THE FACT CONVICTIONS

A. *Background.*

In his initial charge to the jury, the trial judge set forth the elements of accessory after the fact to murder, in accordance with Redbook[4] Instruction No. 4.01, as follows:

> [T]he government must prove beyond a reasonable doubt ... one, that the offense of murder had been committed; two, that the defendant knew that the offense of murder had been committed; three, that knowing that the offense had been committed, the defendant helped the person who committed it; and four, that the defendant did so with the specific intent to hinder or prevent that person's arrest, trial and punishment or punishment. The underlying offense to this charge of being an accessory after the fact is the offense of murder as that offense has been defined in the preceding instructions.

Although the judge's use in this instruction of the words "*had been* committed" indicated that the murder must precede the accessorial acts, the judge did not specifically focus on the question whether Little could be convicted of AAF to murder for conduct which occurred after a decedent was fatally shot but before the decedent died.

During the course of their deliberations, the jurors adroitly detected the problem and made several requests for elaboration of the foregoing instruction. In a note to the judge, they inquired:

> Does Little have to know that an *actual death* occurred to be charged with accessory after the fact or can one be an accessory after the fact if one *only* knows that a serious injury (not death) has occurred (as the definition for 2nd degree murder use[s] death *or serious injury* )?

(Emphasis in original.)

The trial judge heard extensive argument from counsel regarding the appropriate response to this "remarkably intelligent question." Little's attorney urged the judge to instruct the jury that "Little necessarily had to know that when he hit the gas and released the clutch, somebody was dead." The

---

**2.** No weapon was recovered on or in the vicinity of either decedent's body after the shooting.

**3.** Little did not testify, but his attorney presented evidence tending to show that the Morton group were the aggressors and that Little shook hands with Peanut and acted as a peacemaker.

**4.** Criminal Jury Instructions for the District of Columbia (4th ed.1993).

judge remarked that there was authority in the treatises for the position that the decedent must be shown to have been dead at the time of the accessorial acts, and he commented that the "Court of Appeals could go either way on this one." The judge ultimately instructed the jury, however, in accordance with *United States v. McCoy*, 721 F.2d 473, 474–75 (4th Cir.1983), *cert. denied*, 466 U.S. 940, 104 S.Ct. 1918, 80 L.Ed.2d 465 (1984), that "in an accessory after the fact to murder case the defendant must have had knowledge that the victim ... was dead *or dying* at the time he rendered the assistance." (Emphasis added.)[5] Little was subsequently convicted of two counts of being an accessory after the fact to second-degree murder while armed.

Little claims that because Kennedy and Harrell were still alive at the time that he transported Bailey from the scene, the evidence did not support Little's conviction for AAF to murder. Little also challenges the trial judge's re-instruction to the jury on this issue. Little's contentions raise a question of law. Accordingly, we review the judge's disposition *de novo*.

### B. *The elements of the offense.*

In the District of Columbia, the offense of accessoryship after the fact is the subject of a statute which was enacted in 1901, and which provides as follows:

Whoever shall be convicted of being [an] accessory after the fact to any crime punishable by imprisonment shall be punished by a fine or imprisonment, or both, as the case may be, not more than [one-half] the maximum fine or imprisonment, or both, to which the principal offender may be subjected.

D.C.Code § 22–106 (1996).

Section 22–106 does not contain a definition of an accessory after the fact. Accord-

ingly, in conformity with Section 1 of the 1901 Code, D.C.Code § 49–301 (1997),[6] "we look to the common law for an understanding of the substantive definition of the offense." *Heard v. United States*, 686 A.2d 1026, 1029 (D.C.1996); *see also Outlaw v. United States*, 632 A.2d 408, 411 (D.C.1993), *cert. denied*, 510 U.S. 1205, 114 S.Ct. 1326, 127 L.Ed.2d 674 (1994) (citing cases). Section 49–301 "leaves the common law to fill in where statutes are silent." *Day v. United States*, 682 A.2d 1125, 1129 (D.C.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1435, 137 L.Ed.2d 542 (1997).

"The common law of the District of Columbia encompasses all common law in force in Maryland in 1801, unless expressly repealed or modified." *United States v. Jackson*, 528 A.2d 1211, 1215 (D.C.1987) (citing, *inter alia*, D.C.Code § 49–301). Maryland authorities expounding the common law of that state constitute powerful precedent in this jurisdiction,[7] and this court has followed Maryland case law in identifying the four substantive elements of AAF:

(1) A completed felony must have been completed by another prior to the accessoryship;

(2) The accessory must not be a principal in the commission of the felony;

(3) The accessory must have knowledge of the felony; and

(4) The accessory must act personally to aid or assist the felon to avoid detection or apprehension for the crime or crimes.

*Outlaw, supra*, 632 A.2d at 411 (quoting *Howell v. State*, 62 Md.App. 278, 489 A.2d 55, 58 (1983)).

Little contends that the prosecution did not prove the first of these elements, because the murder of the decedents had not been

---

**5.** Before returning its verdict, the jury inquired in another note whether *"dying* can be interpreted as the following—that the decedent was *seriously injured* or that the decedent was at *extreme risk of death."* (Emphasis in original.) Again over Little's objection, the judge responded: "Dead or dying means dead or dying. You must find that Mr. Little knew at the time of his alleged assistance that the decedent or decedents were dead or dying. That's all."

**6.** Section 49–301 provides in pertinent part that "[t]he common law ... shall remain in force except insofar as [it is] inconsistent with, or ... replaced by, some provision of the 1901 Code."

**7.** "Maryland, the source of the District's common law, [is] an especially persuasive authority when the District's common law is silent...." *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C. 1983).

completed at the time Little is alleged to have engaged in the accessorial conduct by transporting Bailey from the scene and by thus attempting to help Bailey to escape. Little also claims that the trial judge incorrectly instructed the jury that Little could properly be convicted as an accessory after the fact to murder even if the underlying murder was incomplete—that is, even if the victim was "dying" but not "dead." Little relies heavily on early common law commentaries cited in *Outlaw, supra,* 632 A.2d at 411 n. 8, which we discuss at pp. 712–713, *infra.* The government argues, on the other hand, that the older common law rule has been superseded by more recent authorities, including, in particular, *McCoy, supra,* 721 F.2d at 474–75.

## C. *The case law and the commentaries.*

The question before us, namely, whether a defendant may be convicted of being an accessory after the fact to murder on the basis of actions taken while the decedent was still alive, was presented to this court less than five years ago in *Outlaw, supra,* 632 A.2d at 410–11. Although we disposed of *Outlaw* on other grounds without expressly deciding that question, we cited some of the relevant authorities [8] and provided a frame of reference for further analysis:

> Although we need not and do not take any position on the issue, we do note as a

8. Specifically, we invited the reader to compare *State v. Williams,* 229 N.C. 348, 49 S.E.2d 617, 618 (1948) with *McCoy, supra,* 721 F.2d at 474–75 (1983).

9. Relying on *United States v. Guiteau,* 12 D.C. (1 Mackey) 498 (1882), the government argues that under District of Columbia common law, a homicide is complete at the time the killer shoots the victim, and that Bailey had therefore committed a completed murder at the time of Little's accessorial acts. We do not agree.

Guiteau shot President James A. Garfield in the District of Columbia, but the President died three months later in New Jersey. Rejecting Guiteau's contention that he could not be prosecuted for murder in the District, the court held that at common law a murder was committed "in the county where the blow was struck," regardless of the place of death. *Id.* at 537. One cannot reasonably disagree with the court's disposition, for the murderer surely could properly be held to answer for his crime in the jurisdiction in which he committed the unlawful deed,

matter of historical fact, not focused upon by counsel, that the District's statute has remained unchanged at least since the beginning of the century, *see* 31 Stat. 1337, ch. 854, § 909 (1901), and that it has been construed as consistent with the common law.... As the government has acknowledged in its well-researched and scholarly brief,

> the early common-law commentators almost invariably take the view that a defendant may not be convicted as an accessory after the fact to murder unless the victim was dead at the time the defendant committed the acts of assistance. *See, e.g.,* I HALE, PLEAS OF THE CROWN 621 (1st Amer. ed. 1847); 4 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 38 (Chitty ed. 1826); II W. HAWKINS, PLEAS OF THE CROWN 448 (Curwood ed. 1824).

632 A.2d at 411 n. 8.

The authorities cited in the *Outlaw* footnote establish that under the common law which was in effect in 1901, when the District's AAF statute was enacted, Little could not have been successfully prosecuted as an accessory after the fact to a murder if the decedent was alive at the time Little provided Bailey with assistance.[9] In order to adopt the position urged upon us by the government, we would have to hold that Little may properly be convicted in 1994 of

no matter where the President subsequently died. To hold otherwise would be to permit the criminal to escape justice on the basis of considerations of location and time that were irrelevant to his guilt.

The decision in *Guiteau,* however, cannot fairly be carried over into the entirely different context of the present case. The Supreme Court made the point effectively in *Armour Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944):

> It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. *To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court.* General expressions transposed to other facts are often misleading.

*Id.* at 132–33, 65 S.Ct. at 168 (emphasis added). We have no reason to believe that, if the issue now before us had arisen in *Guiteau,* the court would have rejected the common law authorities relating to accessories after the fact, or would have held that a defendant could be convicted as

accessoryship after the fact to murder even though the conduct in which he engaged would not have constituted commission of that crime when the AAF statute was enacted, and even though the statute has not been amended in any pertinent respect in the near-century that has elapsed since then.

Notwithstanding the *Outlaw* footnote, there is no dispositive District of Columbia precedent on the question before us. The cases elsewhere are divided, but a majority of the courts have adhered to the traditional common law rule,[10] with only a minority holding to the contrary.[11] The commentators are virtually unanimous in their adherence to the rule advocated by Little.[12]

Notwithstanding what we perceive to be the overwhelming weight of authority, the

---

an AAF to murder for conduct predating the victim's death.

The fact that a homicide is complete for one purpose does not make it complete for all purposes. *State v. Detter,* 298 N.C. 604, 260 S.E.2d 567, 590 (1979). The court explained in *Detter* that

> when it becomes necessary to choose between the time the fatal blow is struck or the time of death for some special purpose, such as accessory after the fact to murder or to determine if a certain punishment is barred by the *ex post facto* clause, *the choice should be dictated by the nature of the inquiry.* PERKINS, CRIMINAL LAW (2d ed.1969). Therefore, our decision in *Williams, supra,* 49 S.E.2d at 618, in which we chose the time of death as the time the murder was committed for the purpose of deciding if defendant was an accessory after the fact to murder, is sound, although, for purposes of the prohibition against *ex post facto* legislation, we hold that the date(s) of the murderous acts rather than the date of death is the date the murder was committed.

*Id.* 260 S.E.2d at 590 (emphasis added).

In light of the "nature of the inquiry" in *Guiteau,* the court held that the murder was committed in the jurisdiction where the defendant shot the President. A contrary disposition would have permitted Guiteau to escape accountability for his crime. In the present case, on the other hand, the relevant inquiry is whether Little was an accessory *after the fact,* and the common law's treatment of a homicide, for AAF purposes, as incomplete until the decedent has died is neither irrational nor inconsistent with *Guiteau.*

**10.** *See, e.g., United States v. Nystrom,* 39 M.J. 698, 704 n. 3 (N.M.C.M.R.1993) ("the murder must have been committed before appellant committed the acts that make him an accessory to murder, thus, the victim must have died prior to the time appellant aided [the principal]"); *State v. Chism,* 436 So.2d 464, 468 (La.1983) ("[a] person cannot be convicted as an accessory after the fact to a murder because of aid given after the murderer's acts but before the victim's death, but under these circumstances the aider may be found to be an accessory after the fact to the felonious assault"). *Detter, supra,* 260 S.E.2d at 590 (the time of death, and not the time of the murderous conduct, determines whether the defendant was an accessory after the fact to murder) (citations omitted); *McClain v. State,* 10 Md.App. 106, 268 A.2d 572, 577 (1970) (to be an accessory after the fact to murder, the defendant must know that the felony has been completed by the victim's death), *overruled in part on other grounds, State v. Hawkins,* 326 Md. 270, 604 A.2d 489, 496 (1992); *Williams, supra,* 49 S.E.2d at 618 ("a person cannot be convicted as an accessory after the fact to a murder because he aided the murderer to escape, when the aid was rendered after the mortal wound was given, but before death ensued, as a murder is not complete until the death results"); *Baker v. State,* 184 Tenn. 503, 201 S.W.2d 667, 668 (1947) ("[t]o fix the guilt of one who is charged as accessory after the [f]act, it is essential that the homicide be complete by the occurrence of death") (citation omitted); *Harrel v. State,* 39 Miss. 702, 704–05 (1861) (where the decedent died within a few hours after the fatal assault, the conviction of the defendant as an accessory after the fact to murder was reversed because the defendant aided the murderer while the decedent was still alive, and because, until the victim died, the offense of murder had not been consummated).

**11.** *See McCoy, supra,* 721 F.2d at 474–75 (accessory is guilty if, at the time he rendered assistance, he knew that the victim was dead *or dying* ) (emphasis added); *Maddox v. Commonwealth,* 349 S.W.2d 686, 689 (Ky.1960) (recognizing common law rule, *but declining to apply it* because the punishment for the offense of accessory after the fact had been reduced by statute; the court reasoned that, in view of the statutory reduction of the penalty, a lesser degree of proof should now be required); *People v. Young,* 192 Colo. 65, 555 P.2d 1160, 1162 (1976) (affirming defendant's conviction of AAF to murder where he knew that the decedent was shot in a robbery; this decision, however, apparently turns on the wording of the applicable Colorado statute). The government also cites *Commonwealth v. McFadden,* 448 Pa. 146, 292 A.2d 358, 360–61 (1972), but we do not read that case as deciding the question whether the prosecution must prove that the decedent was dead at the time that the accessory provided assistance to the murderer.

**12.** In addition to the authorities cited in *Outlaw, supra,* 632 A.2d at 411 n. 8, *see, e.g.,* 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 6.9(a), at 167 (2d ed.1986) ("a person cannot be convicted as an accessory after the fact

government argues that the common law rule is irrational and ought to be revised. Discerning a trend among state legislatures in support of its position, *see, e.g.,* II MODEL PENAL CODE AND COMMENTARIES, § 242.3, cmt. 3, at 228 (1980), the government asks the court to shape the common law of the District accordingly and to affirm Little's convictions. We are not persuaded, however, that our construction of a 1901 statute, the text of which has remained unchanged in pertinent respects for almost a century, should be affected by legislative developments in other jurisdictions.

Indeed, as we have noted, the government is asking us, in prosecutions for accessoryship after the fact to murder, to apply Section 22–106 today to conduct which that statute did not reach at the time of its enactment. If the legislature were to amend the statute on the date of this opinion to conform to the government's position as to what the law should be, then the application of the new rule to Little would assuredly run afoul of the Constitution's proscription against *ex post facto* laws. *Cf. Williams v. United States,* 569 A.2d 97, 100 (D.C.1989).

Assuming, without deciding, that this court's "inherent power to alter or amend the common law," *United States v. Jackson,* 528 A.2d 1211, 1216 (D.C.1987); *Linkins v. Protestant Episcopal Cathedral Found.,* 87 U.S.App. D.C. 351, 354–55, 187 F.2d 357, 360 (1950), permits us to expand, by judicial decree, the scope of a statutory criminal offense, our authority to do so must be exercised with restraint, lest we intrude upon the prerogatives of the legislative branch and the liberties of the citizen. Accordingly, we decline the government's invitation to amend

the venerable common law rule, either as to Little or as to defendants who may be charged with accessoryship after the fact to murder in cases yet to come. Sharing the Supreme Court's "instinctive distaste against men [and women] languishing in prison unless the lawmaker has clearly said they should," *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 522–23, 30 L.Ed.2d 488 (1971) (quoting H. Friendly, Mr. Justice Frankfurter and the Reading of Statutes, in BENCHMARKS 196, 209 (1967)), we conclude that the legislature, and not the court, should decide whether the common-law rule, which is by no means a "capricious obstacle to a prosecution," *cf. Jackson, supra,* 528 A.2d at 1220,[13] should be retained or revised. Justice Holmes said it well:

> Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.

*McBoyle v. United States,* 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931).

### D. The lesser-included offense.

■ The government argues, in the alternative, that if we retain the common law rule as set forth in the commentaries, we should remand the case to the trial court with instructions to reduce Little's accessoryship convictions to AAF to an appropriate lesser-included offense. We agree. As we recently noted in *Willis v. United States,* 692 A.2d 1380, 1383 (D.C.1997),

---

to a murder because of aid given after the murderer's acts but before the victim's death"); ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 748 n. 27 (3d ed.1982) ("[o]ne who knowingly renders aid to help a murderer to escape, after the mortal blow is struck but before the deceased is dead (even if he dies shortly thereafter) cannot properly be convicted under an indictment charging him as accessory to murder after the fact"); 40 AM JUR.2D *Homicide* § 32, at 324 (1968 & Supp.1997) ("[i]n homicide ... in order to fix the guilt of one as accessory after the fact, it is essential that the homicide be completed by the occurrence of death"); 40 C.J.S. *Homicide* § 28, at 389 (1991 & Supp.1997) ("[a]id or assistance

rendered to a party to a homicide does not constitute one an accessory after the act when the aid or assistance was rendered before the death of the victim"); *cf.* JOEL PRENTISS BISHOP, COMMENTARIES ON THE CRIMINAL LAW § 693, at 409 (5th ed. 1872) (prosecutor must show "a knowledge in the harborer's mind of the certain consequence of the blow being death").

**13.** In *Jackson,* the court so characterized, and prospectively abrogated the "year and a day rule," under which a defendant could be prosecuted for homicide only if the victim died within a year and a day of the injury which the defendant had inflicted. 528 A.2d at 1216–20.

federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense [quoting *Rutledge v. United States*, 517 U.S. 292, 306, 116 S.Ct. 1241, 1250, 134 L.Ed.2d 419 (1996)]. The same principle is applicable to this court.

Assault with a dangerous weapon is a lesser-included offense of second-degree murder while armed. *Hebron v. United States*, 625 A.2d 884, 885–86 (D.C.1993).[14] The felony of ADW had been completed when Bailey fired his pistol at the decedents, and the shooting occurred before Little transported Bailey away from the scene.[15] The jury having convicted Little of the greater offense of AAF to murder while armed, it necessarily found him guilty of the lesser-included offense of AAF to ADW. Under these circumstances, there is no need for a new trial.

## III.

## CONCLUSION

■ Little and Bailey claim, the government concedes, and we hold, that each appellant's CPWOL convictions merge. *Cormier v. United States*, 137 A.2d 212, 217 (D.C.Mun.1957). None of the other contentions presented to us by Little[16] or by Bailey[17] warrants reversal, and all of both ap-

---

14. The government suggests that we direct the trial judge to reduce Little's conviction from accessory after the fact to second-degree murder while armed to AAF to aggravated assault while armed (AAWA). *See* D.C.Code § 22–504.1 (1996). The AAWA statute did not become effective, however, until August 20, 1994, more than six months after Little's criminal acts, and it therefore cannot be applied to Little's conduct.

15. In *Williams v. United States*, 478 A.2d 1101, 1105 (D.C.1984), we reversed the accessoryship after the fact conviction of the driver of the getaway car in an armed robbery. We concluded in that case that the robbery continued during the course of the asportation of the proceeds of the robbery, and that the robbery had not been completed at the time of the accessorial acts. We explained that "[i]f the felony is in progress, as the evidence showed in the instant case, [the appellant] would be guilty as a principal, *viz.*, an aider and abettor, rather than an accessory after the fact." *Id.*

In a prosecution for robbery, the government must prove, as an element of its case, that the defendant "carried the [stolen] property away." *See* Criminal Jury Instructions for the District of Columbia, No. 4.46 (4th ed.1993) (the Redbook). This element of the crime of robbery was the predicate for our decision in *Williams*. "[T]he robbery ... was not finished until the robbers had accomplished by force of arms their getaway with the loot." *Jordan v. United States*, 350 A.2d 735, 738 (D.C.1976). The offense of ADW, on the other hand, contains no element of asportation, and the reasoning of *Williams* is therefore inapposite. *See* Redbook Instruction No. 4.07.

16. Little contends that his two AAF convictions also merge. We disagree. "Crimes do not merge if they are perpetrated against different victims." *Hanna v. United States*, 666 A.2d 845, 855 (D.C.1995) (citation omitted). "When the convictions of the principal do not merge, nei-

ther will the convictions of the accessory merge." *Heard, supra*, 686 A.2d at 1030–31.

Little also claims that the evidence was insufficient to support his (now-merged) CPWOL convictions. By attempting to evade the police after Bailey fired the weapons, however, Little participated in Bailey's carrying of the pistols "as something that he wished to bring about ... [and] he sought by his action to make it succeed." *See, e.g., Roy v. United States*, 652 A.2d 1098, 1107 (D.C.1995) (citation and internal brackets omitted). If the evidence is viewed in the light most favorable to the prosecution, *id.* at 1103, it was sufficient to convict Little as an aider or abettor.

17. Bailey claims that the trial judge unduly restricted Bailey's cross-examination of Roderick Matthews, a prosecution witness. In our view, however, the judge did not abuse his broad discretion by refusing to permit Bailey's attorney to question Matthews regarding an incident in Maryland in which Matthews and the two decedents had allegedly kicked down an office door, where the incident did not result in a conviction. *See Roundtree v. United States*, 581 A.2d 315, 323 (D.C.1990). The judge made his ruling on the basis of a limited proffer, and he made it clear that he was not precluding counsel from laying a more comprehensive foundation, but counsel failed to do so. *See Blakeney v. United States*, 653 A.2d 365, 370 (D.C.1995).

Bailey next contends that the judge abused his discretion by denying Bailey's motion for a continuance until an outstanding bench warrant for a defense witness was executed. Given the "wide latitude" granted trial courts in such matters, *Edelen v. United States*, 627 A.2d 968, 972 (D.C.1993), we discern no abuse of discretion. Bailey made no showing that the witness would become available within a reasonable period of time if the requested continuance were granted. *See O'Connor v. United States*, 399 A.2d 21, 28

pellants' remaining convictions are affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*

TERRY, Associate Judge, concurring in part and concurring in the result:

For the most part, I join in Judge Schwelb's opinion for the court and in its reasoning. I specifically agree with the central holding in the case: that in order to convict someone as an accessory after the fact of murder, the government must prove that the victim died before the defendant committed the acts that make him an accessory after the fact. Since the crime of murder is not complete until the victim dies, no one can be an accessory after the fact of murder until that death occurs.

My qualms about this case relate to the question of whether Little was properly charged as an accessory after the fact (AAF) in the first place. I am not fully convinced that Little was an accessory after the fact to any crime—either murder or assault with a dangerous weapon—as distinguished from a principal. This court held in *Williams v. United States,* 478 A.2d 1101, 1105–06 (D.C. 1984), that the driver of a getaway car was a principal, not an AAF, and reversed her AAF conviction for insufficient evidence. Drivers of getaway cars have traditionally (and, I think, correctly) been charged as aiders and abettors, *i.e.,* principals.[1] *See, e.g., Bailey v. United States,* 128 U.S.App. D.C. 354, 359, 389 F.2d 305, 310 (1967) (affirming robbery conviction of fourth defendant, even though he was never identified as a participant in the actual robbery, because he was waiting behind the wheel of the getaway car while the other three defendants committed the crime); *Long v. United States,* 124 U.S.App. D.C. 14, 20–21, 360 F.2d 829, 835–36 (1966) (affirming felony murder conviction of getaway driver because he aided and abetted the two gunmen in leaving the scene of the crime). I am puzzled by the government's decision to depart from these established precedents and charge Little as an AAF (even though it also charged him alternatively as a principal in another count of the indictment). The *Williams* case, in particular, appears to be plainly inconsistent with that decision and with our holding here today.

On the other hand, perhaps I am seeing phantoms that are not really there. Judge Schwelb, in footnote 15 of his opinion, *ante* at 715, strives to reconcile *Williams* with the case at bar. Although I am not entirely persuaded by his reasoning, I cannot say that it is clearly wrong or unreasonable, and on that basis I join in the court's decision to remand with directions to reduce the conviction from AAF-murder to AAF-assault with a dangerous weapon. The question that troubles me was barely mentioned in Little's brief and was not briefed at all by the government (it does not affect Bailey), and there may well be a ready answer to it that I have not thought of. Someday, I think, we will have to reconcile the *Williams* decision (and *Bailey* and *Long* as well) with our holding in

(D.C.1979). Moreover, it does not appear that the witness' expected testimony would have significantly contributed to Bailey's defense. *See Price v. United States,* 545 A.2d 1219, 1228 (D.C. 1988).

Bailey claims that during closing argument, the prosecutor improperly placed the burden of proof on the defense. There was no objection at trial to the remarks of which Bailey now complains, and we are satisfied that the trial judge did not commit plain error by declining to intervene, *sua sponte. See, e.g., Irick v. United States,* 565 A.2d 26, 32–33 (D.C.1989). Even assuming, *arguendo,* that the prosecutor's argument could reasonably be construed as seeking to shift the burden—and it is not at all obvious that it could—the judge's repeated, correct and unchallenged allocation of the burden of proof to the prosecution effectively assured that the jury would not be misled. *See Allen v. United States,* 603 A.2d 1219, 1226 (D.C.) (en banc), *cert. denied,* 505 U.S. 1227, 112 S.Ct. 3050, 120 L.Ed.2d 916 (1992); *id.* at 1239–40 (Terry, J., concurring).

Finally, Bailey argues that the judge committed reversible error by omitting the much-litigated "hesitate or pause" phrase from his instruction on reasonable doubt. Bailey's position is foreclosed by *Butler v. United States,* 646 A.2d 331, 334–38 (D.C.), *cert. denied,* 514 U.S. 1009, 115 S.Ct. 1326, 131 L.Ed.2d 206 (1995).

1. D.C.Code § 22–105 (1996) provides that "all persons ... aiding and abetting the principal offender shall be charged as principals and not as accessories...."

the instant case. For the moment, though, I am content to let this particular sleeping dog remain a little longer in the arms of Morpheus.