Joseph F. CORMIER, Appellant,

v.

UNITED STATES, Appellee.

Nos. 2060, 2061.

Municipal Court of Appeals for the
District of Columbia.

Argued Oct. 28, 1957.

Decided Dec. 30, 1957.

David F. Smith, Washington, D. C., for appellant.

Harry T. Alexander, Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., Lewis Carroll and Fred D. Durrah, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was charged in two informations with the carrying of two pistols on a single occasion without a license for either one.[1] A jury convicted him on each charge, and thereafter he was sentenced to 180 days for each offense, the sentences to run consecutively. On appeal nineteen assignments of error are urged, many of them overlapping and repetitive. The following points are of sufficient substance to require discussion by us:

I

Appellant contends that the lower court erred in denying his motion to suppress the guns as evidence and in not directing an acquittal at the close of the evidence on the theory that they were obtained as the result of an illegal search.

The evidence in behalf of the prosecution showed that two police officers were patrolling their beat one evening when they were approached by a "hysterical" nine-year-old girl. She stated that she had gone to look for her fourteen-year-old sister in a certain house, that she had been chased out, that there was a man with a gun in the house, and also another girl who was in bed with a man. She described the man with the gun and said that his car, bearing Virginia license plates, was parked in front of the house. The officers proceeded to the address given, saw the car parked in front, and knocked on the door. A person inside asked, "Who is it?" and one of the officers said, "Police. Open the door." The person then walked away without opening the door. The officer "twisted the knob, pushed on it; the door came open." They entered the house, walked through the hallway and into the front room where they observed appellant, two boys, another man, and two girls, one of whom proved to be the sister of the original complainant. According to the officer the following events occurred:

"I asked everybody to stand up, the men. I was referring to the men; and when the men, everybody stood excepting the defendant, at that time I walked over to him and asked, 'Who has the gun?' and he started for his pocket, I caught his hand, put my hands in his pocket, his topcoat pocket, and pulled, er ah, a .32—I believe it was a .32-caliber automatic, foreign-make automatic—

\* \* \* \* \* \*

"And at that time I told my partner, 'This is the man got the gun,' and my partner caught the defendant from the other side and felt his pockets, and he says, 'He's got another gun,' pulled the gun out of his pocket."

In response to a question from defense counsel, the officer first testified that he ar-

1. Code 1951, § 22–3204 (Supp. V).

rested appellant on the basis of the original complaint, then stated he arrested him as a result of finding the two guns on his person. At no time did the officers have either an arrest warrant or a search warrant.

Appellant's position is that there was no probable cause for his arrest, and consequently the arrest was illegal and the search as an incident to the arrest was correspondingly illegal; that the forced entry into the house without a warrant was illegal because there was no showing of necessitous circumstances to justify it, nor did the officers properly announce the cause of their demand for entry; and that the arrest followed, rather than preceded, the search of his person, and was based on what the search revealed.

■ We believe that the officers had probable cause to arrest appellant. By virtue of Code 1951, § 23–306(a) and (b) (Supp. V), police officers are empowered to make an arrest for a violation of Section 22–3204 "as in the case of a felony, upon probable cause that the person arrested is violating the section involved at the time of the arrest." The rule with respect to what constitutes probable cause has been stated many times. It means more than bare suspicion; it exists where the facts and circumstances within the officers' knowledge are sufficient in themselves to warrant a reasonable belief that an offense has been or is being committed.[2] We think the information imparted to the officers here by the girl was sufficient to induce a reasonable belief of a violation. Compare, for example, Dickerson v. United States, D.C.Mun.App.1956, 120 A.2d 588, 590, in which an officer arrested the defendant

after bumping him with his elbow and feeling a hard object, and this court held that

> " * * * The time of night, the evasive and suspicious nature of defendant's behavior, and what the officer felt on contact with defendant, all combined to establish probable cause and justify the arrest." [3]

In the instant case, the officers had definite knowledge that a man fitting appellant's description was carrying a gun, under highly suspicious circumstances, and consequently the arrest was proper.

■ We need not decide whether the forced entry into the house without a warrant was improper, for we do not believe that appellant has any standing to challenge it. Appellant did not reside in the house; he was merely a guest. While the Supreme Court has left open the question of whether a guest has standing to complain of an illegal entry,[4] the United States Court of Appeals for the District of Columbia Circuit has ruled on several occasions that he has no such right.[5]

■■ Nor can we agree that the arrest followed the search and resulted from it. While the officer never specifically told appellant prior to the search, that he was under arrest, his actions in ordering him to stand up and in seizing his hand clearly constituted a restraint on his liberty and thus an arrest.[6] The inconsistencies in the officer's testimony, on which appellant relies, presented at most a factual question to be considered in connection with the other evidence. The lower court resolved this issue against appellant, and we think its conclusion was supported by the evidence.

2. Brinegar v. United States, 1949, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L. Ed. 1879.

3. 120 A.2d at page 590.

4. McDonald v. United States, 1948, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153. See the discussion in the annotation at 96 L.Ed. 66, 81.

5. Gaskins v. United States, 1955, 95 U.S. App.D.C. 34, 218 F.2d 47, and cases cited therein. See also, United States v. Pepe, 2 Cir., 1957, 247 F.2d 838, 841.

6. Morton v. United States, 79 U.S.App. D.C. 329, 331–332, 147 F.2d 28, 30–31, certiorari denied, 1945, 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428.

## II

Several assignments of error center upon the introduction into evidence and use by the government of certain F. B. I. reports and records for the purpose of proving alleged prior convictions of appellant. For reasons hereinafter stated, we hold that the admission and use of such records were error, but that it does not require reversal by us.

█ Although the case took several days to try and the record before us is voluminous, the basic facts were relatively simple. The prosecution's evidence indicated that appellant was carrying the guns, and it was stipulated that he did not have a license for either one. Appellant took the stand and admitted carrying the guns. He testified that he was employed as the manager of a service station located in Arlington, Virginia. On the evening in question he left the service station carrying with him a loaded automatic pistol which he owned, and a second loaded pistol belonging to a customer which he had "volunteered" to clean and repair. He took a taxicab to the house in question in order to transact some business with the occupant, intending to return to his own home in Virginia and leave the guns there.

Appellant attempted to establish a defense based on Code 1951, § 22–3205, which provides in part as follows:

"The provisions of section 22–3204 shall not apply * * * to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another."

We think, however, that appellant's own testimony precludes assertion of these defenses, for he stated that repairing guns was only his hobby and that he had "volunteered" to work on a customer's gun; and secondly, even assuming that he was merely carrying the guns between two lawfully excepted places, he acknowledged that they were not unloaded and not in a secure wrapper, as required by the statute. It will thus be seen that all of the basic facts necessary to support a conviction here were not only proved but admitted.

With the case in this factual posture, the prosecutor then attempted to prove certain prior convictions of appellant for the purpose of impeaching his "credibility." On cross-examination when asked if he had been convicted of a number of crimes, appellant admitted one conviction but claimed that it had been reversed on appeal, and denied the others. In rebuttal, the government introduced, over objection, an F.B.I. record of various arrests and convictions of appellant.

█ The admission and use of these records were clearly erroneous. Code Section 14–305 provides that proof of prior convictions for the purpose of affecting credibility is to be accomplished by producing the "certificate, under seal, of the clerk of the court wherein such proceedings were had, stating the fact of the conviction and for what cause, * * *." This method is exclusive and proof by any other means is inadmissible.[7]

We do not believe that this error is such as to require reversal. The convictions were only used to affect credibility which, as we have indicated, was not a consideration here because all the essential facts were admitted. Were a serious factual is-

---

7. Simms v. United States, D.C.Cir., 248 F.2d 626, 630, certiorari denied, sub nom., Duncan v. United States, 1957, 78 S.Ct. 127, 2 L.Ed.2d 79; Clainos v. United States, 1947, 82 U.S.App.D.C. 278, 163 F.2d 593.

sue presented in the instant case, we would not hesitate to order a new trial, for this discussion of alleged convictions is spread over many pages of the record and could hardly fail to have a prejudicial effect on a jury. Here, however, the evidence of guilt was conclusive and consequently we do not feel that the error should form the basis of reversal.[8] We have only treated it at such length in the hope that it will not occur again.

### III

Appellant claims that the judge did not give a proper charge with respect to the defenses he attempted to raise and also alleges that certain remarks of the judge made in the course of the trial and in the instructions were indicative of bias. As we indicated in Section II, these defenses were not available under the evidence here. Considered as a whole, we believe that the charge was, if anything, more favorable to appellant than he was entitled to, nor do we think, after examination of the record, that the remarks of the judge display bias.

### IV

■ Appellant contends that the facts of this case show the commission of but one offense rather than two. Both guns were carried simultaneously, and the prosecution for each gun was under the same statute, Section 22–3204. Two convictions resulted, and a separate sentence of 180 days was imposed in each case, the sentences to run consecutively.[9] Appellant argues that in this type of situation he could be prosecuted for only a single offense.

In Bell v. United States, 1955, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, the defend-

ant transported two women on the same trip and in the same vehicle. He was charged with violating the Mann Act,[10] pleaded guilty to an indictment laid in two counts, each referring to a different woman, and received a sentence of two years and six months on each count, the sentences to run consecutively.[11] Subsequently he moved to correct the sentence on the theory that he had committed only one crime. The District Court denied his motion and the Court of Appeals affirmed.

In reversing, the Supreme Court stated that while persuasive arguments could be advanced for either position, it was not shown that Congress expressly intended "to make each stick in [the] faggot a single criminal unit."[12] Consequently it was held that:

"* * * if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes."[13]

The reasoning in the Bell case was followed and applied by the court in Rayborn v. United States, 6 Cir., 1956, 234 F.2d 368, in which the accused transported a load of weapons and ammunition on one trip in violation of the Federal Firearms Act.[14] Each weapon and each lot of ammunition was made the subject of a separate count, and separate sentences were imposed for each count, some running concurrently but others consecutively. Relying on the Bell case, the court held that but one offense had been committed.

8. Cf. Clainos v. United States, supra, note 7.

9. Under Code 1951, § 22–3215, appellant could have received a maximum of one year for a first offense; Code 1951, § 22–3204 (Supp. V), provides that for second or subsequent offenses a person may receive up to ten years.

10. 36 Stat. 825 (1910), 18 U.S.C. § 2421.

11. The Act provides a maximum of five years for each offense.

12. 349 U.S. at page 83, 75 S.Ct. at page 622.

13. Id., 349 U.S. at page 84, 75 S.Ct. at page 622.

14. 52 Stat. 1250 (1938), 15 U.S.C.A. § 902 (e).

It is our opinion that the principles announced in the Bell and Rayborn cases are controlling in the instant case and require reversal by us of the second judgment, entered in No. 2060. Nothing in the statutes defining the crime of carrying a pistol and fixing the punishment discloses that Congress intended that there be multiple prosecutions in the type of situation presented here. As in Bell, our problem is doubtful, and consequently we must resolve that doubt in favor of appellant.

The other errors alleged are without merit.

Judgment in No. 2061 is affirmed.

Judgment in No. 2060 is reversed.