Jamar B. HAMMOND, Appellant,

v.

UNITED STATES, Appellee.

No. 11–CF–1484.

District of Columbia Court of Appeals.

Submitted June 26, 2013.

Decided Aug. 1, 2013.

Christine Pembroke, Washington, DC, for appellant.

Ann K.H. Simon, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Chrisellen R. Kolb, and Phillip A. Selden, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, BECKWITH, Associate Judge, and NEBEKER, Senior Judge.

WASHINGTON, Chief Judge:

Appellant, Jamar B. Hammond, appeals his conviction for one count of unlawfully possessing a firearm after being convicted of a felony ("UPF"), two counts of possessing an unregistered firearm ("UF"), and two counts of unlawfully possessing ammunition ("UA"). On appeal, appellant argues that his two UF convictions should be merged, as well as his two convictions for UA, and that his conviction for UPF should merge with his convictions for UF. Appellant also contends that there was insufficient evidence to establish his constructive possession of the firearms or the ammunition. Finally, appellant argues that the trial judge erred in admitting at trial the ammunition recovered from the apartment appellant shared with his wife because the government failed to call the officers who actually collected and labeled the ammunition. For the following reasons, we affirm, but remand this case with an instruction to vacate one of appellant's two UA convictions.

## I.  FACTS

On March 26, 2011, the police stopped a vehicle driven by appellant's mother. Appellant was seated in the front passenger seat and his wife and child were in the back seats. Appellant became very agitated and irate as the police officers approached the vehicle and, consequently, was detained in handcuffs. The officers asked appellant's mother for permission to search the trunk and she provided the police with a key to the trunk, leading appellant to become even more irate. Inside the trunk, the officers found a .22 caliber rifle and a .270 caliber rifle. Upon seeing the rifles, appellant's mother became upset and yelled at appellant, "asking him why he put the guns in there." Appellant responded, "I'm not trying to hurt no one. I'm trying to protect my wife. Those joints are not loaded."

Police later searched the apartment appellant shared with his wife and found in the bedroom dresser five rounds of .22 caliber ammunition and one round of .270 caliber ammunition in close proximity to an identification bracelet bearing appellant's name and photograph and a PEPCO bill bearing appellant's name and the ad-

dress of the apartment. The parties stipulated that at the time of the crime, appellant had been convicted of a felony and did not have a registration certificate for either rifle.

On September 12, 2011, a jury found appellant guilty of all five firearm and ammunition charges.

## II. ANALYSIS

### A. Appellant's Merger Arguments

#### i. Merger of Two Possession of an Unregistered Firearm Convictions

Appellant argues that the UF statute is ambiguous as to whether the legislature intended the unit of prosecution to be the possession of each individual unregistered firearm or any possession, multiple or not, of an unregistered firearm. Appellant points to the language in the statute that prohibits possessing or controlling "*any* firearm," arguing that the lack of specificity makes it unlikely, or at least unclear, that the legislature intended possession of each individual firearm to constitute a separate violation. D.C.Code § 7–2502.01 (2001) (emphasis added). For that reason, appellant contends that under the rule of lenity, this ambiguity should be resolved in favor of reducing appellant's two convictions for possession of an unregistered firearm to one conviction. The unit of prosecution for possession of an unregistered firearm is an issue of first impression for this court.

■ An appellant's claim that he has been unlawfully convicted for multiple violations of a single statute is an issue of "statutory application" and "not one of Constitutional interpretation." *Speaks v.*

*United States,* 959 A.2d 712, 716 (D.C. 2008) (citing *Ladner v. United States,* 358 U.S. 169, 173, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958)). We review claims involving matters of statutory interpretation *de novo. Peterson v. United States,* 997 A.2d 682, 683 (D.C.2010). In reviewing claims of unlawful multiple convictions of a single statute, "our role is to determine what the legislature intended to be the allowable 'unit of prosecution.'" *Lennon v. United States,* 736 A.2d 208, 210 (D.C.1999) (quoting *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955)). "The primary rule of statutory construction is that the intent of the legislature is to be found in the language which it has used." *Alfaro v. United States,* 859 A.2d 149, 156–57 (D.C.2004) (quoting *J. Parreco & Son v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43, 46 (D.C.1989)) (internal quotation marks omitted). Where the plain meaning of the words of the statute is unambiguous, that is dispositive, and we have "no occasion to examine [the statute's] legislative history for guidance." *Newby v. United States,* 797 A.2d 1233, 1239 (D.C.2002). If the unit of prosecution is not clear from the statutory language, however, it is "determined by reference to the legislative intent in framing the offense." *Williams v. United States,* 569 A.2d 97, 98 (D.C.1989).

■ The trial court did not err in convicting appellant of two counts of UF because the unit of prosecution under the statute is each individual unregistered firearm. The UF provision prohibits possession of "any firearm, unless the person ... holds a valid registration certificate for *the* firearm." D.C.Code § 7–2502.01 (2001) (emphasis added).[1] Thus, the statute's

1. "Except as otherwise provided in this unit, no person or organization in the District of Columbia ("District") shall receive, possess, control, transfer, offer for sale, sell, give, or deliver any destructive device, and no person

or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm." D.C.Code § 7–2502.01 (2001).

plain language defines the unit of prosecution as "*the* firearm" that is possessed, but not validly registered. Related provisions of the statute support this reading by focusing on the individual characteristics of each firearm for the purposes of registration. The statute requires highly detailed identifying information about each individual firearm's make and where it will be kept in order to obtain registration—a registration that is valid only for that particular firearm and that must be surrendered when that firearm is transferred or disposed of. *See* D.C.Code §§ 7–2502.03 to 7–2502.10 (2001). As the statute's clear purpose is to collect information on each firearm possessed in the District of Columbia in order to be able to identify and track that firearm, the unit of prosecution must be each individual non-registered firearm in order to give effect to the legislature's intent.[2]

While this court in *Headspeth v. District of Columbia*, 53 A.3d 304 (D.C.2012), permitted the merger of a defendant's UF convictions pursuant to an agreement between the parties that the convictions should merge, that case does not control our statutory interpretation of the UF provision. The parties in *Headspeth* agreed that the defendant's UF convictions should be merged on the basis of *Cormier v. United States*, 137 A.2d 212, 217 (D.C. 1957), which held that a defendant carrying two unlicensed pistols was guilty of only one violation of carrying a pistol with-

out a license. *Headspeth*, 53 A.3d at 307. The *Headspeth* court pointed out that "*Cormier* was concerned with a different statute," but nevertheless accepted the parties' agreement and directed the trial court to merge the convictions. *Id.* at 307. Because the court in *Headspeth* did not analyze or purport to decide the statutory issue at hand, we are not bound by that court's decision to allow the merger of the UF convictions in that case. *See Murphy v. McCloud*, 650 A.2d 202, 205 (D.C.1994) ("The rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question.... A point of law merely assumed in an opinion, not discussed, is not authoritative." (internal citations and quotation marks omitted)).

Since the UF statute is not ambiguous, the rule of lenity does not apply and we affirm appellant's conviction for two counts of possession of an unregistered firearm. *See Murray v. United States*, 358 A.2d 314, 321 (D.C.1976) (holding that the rule of lenity did not apply where "the language and logic of the statute reflect the legislature's intent" as to the unit of prosecution).[3]

## ii. Merger of Possession of an Unregistered Firearm and Felon in Possession Convictions

■ In addition, appellant argues that his UF convictions should merge with his

2. The legislative history of the current UF statute further supports reading possession of each individual unregistered firearm as the intended unit of prosecution. The legislative history reveals the D.C. Council's intent to deter avoidance of the new registration requirements by means of increased penalties (among which, the UF crime) for violation of these new requirements. D.C. COUNCIL, REPORT ON BILL 1–164 at 2–3, Firearms Control Act of 1975 (Apr. 21, 1976). As the new registration requirements prominently included the requirements for detailed information

about each individual firearm, the Council's intent to use the increased penalties to deter avoidance of these requirements can only be given effect by treating each failure to obtain a registration certificate as an individual, separate offense.

3. Appellant also argues that his two convictions for unlawful possession of ammunition ("UA") should merge. The government concedes this argument and we see no reason to question that concession in this case.

UPF conviction because the convictions are functionally equivalent. Specifically, appellant argues that since the ability to register a firearm is denied to felons as a matter of law, the government's proof at trial that he violated the UPF statute satisfied all the elements of the UF crime.

■ We review claims of merger of convictions *de novo* "to determine whether there has been a violation of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States." *Sanchez–Rengifo v. United States,* 815 A.2d 351, 354 (D.C.2002) (quoting *Maddox v. United States,* 745 A.2d 284, 294 (D.C. 2000)) (internal quotation marks omitted).

■ We have previously held that a UPF conviction does not merge with a UF conviction because "each [crime] requires proof of a fact which the other does not." *Washington v. United States,* 53 A.3d 307, 309 (D.C.2012) (applying the test laid out in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) to determine whether two offenses merge). "To prove UF, the government must show [1)] that the defendant knowingly possessed a firearm; and 2) that firearm had not been registered as required by law." *Id.* (citing D.C.Code § 7–2502.01 (2001)). "[T]o prove UPF, the government must show that 1) the defendant had been convicted of a felony and 2) that he owned or kept a firearm, or that he had a firearm in his possession or under his control." *Id.* (citing D.C.Code § 22–4503(a)(2) (2001)). Consequently, appellant's argument that felons are legally unable to register firearms does not require that his conviction for UF be merged with his conviction for UPF.

## B. Sufficiency of Evidence of Possession of Firearms and Ammunition

Appellant argues that the evidence that he constructively possessed the firearms and the ammunition was insufficient beyond a reasonable doubt. Appellant contends that he was not and could not have been in possession of the rifles in the trunk given that the rifles were not found on his property, but in the trunk of his mother's car, which she was driving and to which he did not have a key. He also notes that none of his fingerprints were found on the rifles. In addition, appellant argues that there was insufficient evidence that he was in possession of the ammunition because the government did not provide a lease proving that appellant was a tenant of the apartment and appellant was not present during the search of the apartment. Further, appellant notes that there was no evidence as to whether the contents of the dresser in which the ammunition was found belonged primarily to a male or a female.

■ On a challenge to the sufficiency of the evidence, "[w]e view the evidence in the light most favorable to the prosecution to determine whether a reasonable factfinder could find guilt beyond a reasonable doubt." *James v. United States,* 39 A.3d 1262, 1269 (D.C.2012) (quoting *In re M.L.,* 24 A.3d 63, 66 (D.C.2011)) (internal quotation marks omitted). "Constructive possession of a weapon [or ammunition] requires proof that a defendant (1) knew of [its] location; (2) had the ability to exercise dominion and control over it; and (3) intended to exercise such dominion and control." *Gorbey v. United States,* 54 A.3d 668, 700 (D.C.2012) (quoting *Taylor v. United States,* 662 A.2d 1368, 1372 (D.C. 1995)) (internal quotation marks omitted).

■ We are satisfied that there was sufficient evidence that appellant had constructive possession of the firearms. Although it was appellant's mother who gave the police a key to the trunk, appellant effectively admitted that he had put the two firearms in the trunk by his response to his mother's angry inquiry as to why he

put the rifles in the trunk: "I'm not trying to hurt no one. I'm trying to protect my wife. Those joints are not loaded." Appellant's agitated behavior as the officers approached the trunk combined with his statements strongly indicate that he had knowledge of the location of the rifles and the intent and ability to control them since he stated he had them "to protect his wife." *See Earle v. United States*, 612 A.2d 1258, 1265–66 (D.C.1992) (finding constructive possession where defendant was in close proximity to contraband and evidence linked defendant to activity "of which the possession [of the contraband] is a part.").

■■■ We are also satisfied that there was sufficient evidence that appellant had constructive possession of the ammunition. Even if there was no direct evidence that appellant lived in the apartment where the ammunition was recovered, there is strong circumstantial evidence. Appellant's wife, who was also in the car on the night they were pulled over, consented to the search of the apartment and the ammunition was found in the same dresser as an identification bracelet bearing appellant's name and photograph and a PEPCO bill bearing appellant's name and the address of the apartment. This evidence strongly suggests appellant lived in the apartment and thus had the ability to exercise dominion and control over the ammunition. *See Moore v. United States*, 927 A.2d 1040, 1050–51 (D.C.2007) (finding constructive possession of contraband where illegal drugs and a gun were found in an apartment, defendant was not in the apartment during the search but admitted to living in the apartment, his wife was the lessee, and the contraband was found in the apartment's only bedroom and lying in plain view next to defendant's personal papers). Furthermore, appellant's statements that he intended to use the rifles to protect his wife, but that they were unloaded, combined with the fact that the calibers of the ammunition recovered from the apartment matched the calibers of the rifles found in the trunk, showed appellant's knowledge of the location of the ammunition and his intent to use the ammunition with those rifles. These facts allow a reasonable factfinder to infer beyond a reasonable doubt that appellant had constructive possession of the ammunition.

## C. Admissibility of Ammunition Evidence

Finally, appellant argues that the trial court violated his Confrontation Clause rights and chain of custody requirements in admitting into evidence ammunition recovered from his apartment without producing for cross-examination any officer who was actually involved in collecting and labeling the evidence. Instead, the government called Officer Little, one of the officers who searched the apartment and saw the ammunition in the dresser drawer, but did not physically collect the evidence or bring it to the police station.

■■■ The trial court did not err in admitting the ammunition into evidence without the testimony of the officer who actually recovered the ammunition because the failure to establish a chain of custody for the evidence goes to its weight and not its admissibility. *In re D.S.*, 747 A.2d 1182, 1187 (D.C.2000). Further, because the officer who identified the ammunition as having been taken from appellant's room was available for cross examination, the appellant's confrontation rights were not violated. *See Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (confrontation requirement for testimonial statements satisfied by opportunity to cross-examine). Officer Little testified that he personally saw the ammunition being recovered from the scene, watched it being placed in an evidence bag, and witnessed the officer mark

the bag into which the ammunition was placed. Because the officer was testifying about his personal observations, appellant was not prejudiced in his ability to cross examine the witness. *See Goldsberry v. United States,* 598 A.2d 376, 382 (D.C. 1991) ("[E]vidence that is not hearsay does not implicate the Confrontation Clause."). As the physical ammunition itself was not necessary to prove UA, but was simply demonstrative and corroborative of what Officer Little had already testified to, even if the ammunition evidence was admitted in error, we are satisfied that any error was harmless under any standard.

## III.

For the foregoing reasons, we affirm the trial court's judgment as to appellant's UPF and UF convictions, but, based on the government's concession that appellant's two UA convictions should merge, remand this case for the trial court to vacate one of appellant's two UA convictions, and for resentencing.

*So ordered.*