# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 15, 2021        Decided July 13, 2021

No. 19-3094

UNITED STATES OF AMERICA,
APPELLEE

v.

MORRIS GEMAL JOHNSON,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cr-00125-1)

———

*Virginia A. Williamson* argued the cause for appellant. With her on the briefs were *Adam Margulies*, *Kevin King*, *Alexander Schultz*, and *Nicole Antoine*.

*Nicholas P. Coleman*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *Elizabeth Trosman*, Assistant U.S. Attorney.

Before: SRINIVASAN, *Chief Judge*, ROGERS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: Morris Gemal Johnson was convicted of multiple counts under federal and D.C. law for making, possessing, and smuggling firearms or destructive devices. The bulk of those charges concerned two improvised explosive devices found in Johnson's home. We hold that his two federal firearm possession convictions are "multiplicitous" of—i.e., impermissibly duplicative of—his two federal firearm manufacturing convictions, in violation of the Double Jeopardy Clause. We further hold that his two D.C. law convictions for possessing a weapon of mass destruction are multiplicitous of each other. We also remand his claim that he received constitutionally ineffective assistance of trial counsel in connection with his decision to reject the government's offer of a plea agreement.

I.

A.

On January 23, 2014, agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) executed a search warrant at Johnson's home. The agents recovered explosive powder and various other items associated with the production of explosive devices. They also found cardboard boxes containing several .37-millimeter ammunition shells—most of them empty—with caps and primers on them. (Primers detonate explosive material around them when hit with force.) One of those .37-millimeter shells had been assembled as an improvised explosive device (IED) using, among other things, explosive powder, hobby fuse, and a primer. ATF Agent Richard Campbell was the agent who looked through the boxes and disassembled and later examined the IED.

In September 2017, while reviewing photos of the evidence with the prosecutor, Agent Campbell "saw in those

photographs additional items that [he] had not examined yet" within the seized boxes. Trial Tr. 332:20–22, J.A. 205. The prosecutor asked Campbell to review that evidence, and in doing so, Campbell discovered that one of the .37-millimeter shell casings left in the boxes "had some weight to it and appeared to be loaded with something." *Id.* at 340:4–5, J.A. 213. Campbell disassembled and examined it, concluding that it, like the shell casing discovered on the day of the search of Johnson's home, had been converted into an IED.

In January 2018, a grand jury returned the operative indictment in this case. The indictment contained eight counts alleging violations of federal and D.C. law: (1) Unlawful Receipt or Possession of an Unregistered Firearm and Destructive Device, 26 U.S.C. §§ 5861(d), 5871; (2) Unlawful Making of a Firearm, 26 U.S.C. §§ 5822, 5861(f), 5871; (3) Possession of a Weapon of Mass Destruction, D.C. Code § 22-3154(a); (4) Unlawful Receipt or Possession of an Unregistered Firearm and Destructive Device, 26 U.S.C. §§ 5861(d), 5871; (5) Unlawful Making of a Firearm, 26 U.S.C. §§ 5822, 5861(f), 5871; (6) Possession of a Weapon of Mass Destruction, D.C. Code § 22-3154(a); (7) Conspiracy to Smuggle Goods into the United States, 18 U.S.C. § 371; and (8) Conspiracy to Engage in the Interstate Transportation of Unregistered Machine Guns and Silencers, 18 U.S.C. § 371.

Of relevance to this appeal, Counts One through Three pertained to one of the two .37 mm shell IEDs, and Counts Four through Six contained parallel charges pertaining to the second such device. All told, there was a federal possession, federal manufacture, and D.C. possession charge for each of the two IEDs (Counts One through Six), along with two conspiracy charges (Counts Seven and Eight). The district court later asked the parties to consider whether the two conspiracy counts

were duplicative, and the government subsequently dismissed Count Eight.

## B.

Before trial, the government made Johnson a plea offer under which he would plead guilty on two of the federal counts in exchange for the government's dropping the remaining charges. Johnson rejected the proposed plea agreement.

The trial took place in April 2019. During the trial, the defense introduced evidence about ATF Agent Campbell, the agent who had disassembled and examined both IEDs. The evidence concerned Campbell's involvement in a case in the Eastern District of Kentucky in which Campbell had submitted an affidavit that, according to the Kentucky trial judge, "had grossly overstated the amount of fireworks that were visibly damaged." Trial Tr. 342, J.A. 215.

Before the close of evidence in Johnson's trial, the government asked the court to bar the defense from suggesting that Agent Campbell had tampered with evidence in Johnson's case. The court permitted the defense to argue that the evidence had been mishandled by the government and that Campbell was not a credible witness because of the Kentucky judge's statement, but the court declined to permit any suggestion that Campbell had tampered with the evidence. The court found that there was "no record evidence" of tampering. *Id.* at 1312:19, J.A. 290. Defense counsel preserved an objection on the ground that a jury could reasonably infer tampering from the evidence.

The jury found Johnson guilty on all seven counts submitted to it. Johnson now appeals.

5

II.

Johnson makes four arguments on appeal. First, he contends that his two federal possession counts are multiplicitous of his two federal manufacturing counts, in violation of the Fifth Amendment's Double Jeopardy Clause. Second, he argues that his two D.C. law convictions are multiplicitous of each other. Third, he urges us to find that the district court abused its discretion when it prevented his counsel from arguing that Agent Campbell had tampered with the evidence. Fourth, he claims that that his trial counsel rendered him constitutionally ineffective assistance by failing to advise him that his preferred defense would not be presented at trial.

We grant Johnson relief on first and second challenges, reject his third challenge, and remand for the district court to consider his fourth challenge in the first instance.

A.

Johnson first argues that his federal possession convictions (Counts One and Four) must be vacated as duplicative of his federal manufacturing convictions (Counts Two and Five). The government agrees with Johnson, and so do we.

The parties nominally view the issue under different conceptual frameworks. The government analyzes the issue as one of merger—i.e., whether a lesser-included offense merges with a greater offense. *See Rutledge v. United States*, 517 U.S. 292, 305–06 (1996). Johnson characterizes the issue as one of multiplicity—i.e., whether one offense is repetitive of another. *See United States v. Cooper*, 886 F.3d 146, 153 (D.C. Cir. 2018). Either conceptual formulation implicates the Double Jeopardy Clause's prohibition against "multiple punishments

for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). And the parties agree that, regardless of the conceptual framework, the question to be asked is ultimately the same: "whether each [offense] requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999). In other words, if one offense does not require proof of any facts beyond what is required to prove a second offense, a conviction of the first offense would be impermissibly duplicative of a conviction of the second.

Here, as Johnson contends and the government concedes, Johnson's federal possession charges (Counts One and Four), *see* 26 U.S.C. § 5861(d), did not require proof of any additional facts beyond that required to prove his guilt on his federal manufacturing charges (Counts Two and Five), *see id.* §§ 5822, 5861(f). Johnson's convictions on Counts One and Four thus must be vacated.

## B.

We next consider Johnson's contention that his two D.C. law convictions for possession of a weapon of mass destruction are multiplicitous of each other. Each of those two counts is tied to one of the two modified .37mm shell IEDs discovered in the cardboard boxes found in Johnson's home.

Johnson's multiplicity challenge regarding those D.C. law counts, like his multiplicity challenge regarding the federal possession and manufacturing counts, concerns the Double Jeopardy Clause's bar against multiple punishments for the same offense. But the two challenges differ in the following respect: the challenge to the federal convictions asks whether two charges arising under *different* federal statutes are duplicative of one another, whereas the challenge to the D.C.

convictions asks whether two ostensibly distinct violations of the *same* D.C. statute are duplicative of one another. And "[w]here two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the *Blockburger* test, but by asking what act the legislature intended as the 'unit of prosecution' under the statute." *Weathers*, 186 F.3d at 952.

Here, the relevant statute is D.C. Code § 22-3154(a), which bars possessing weapons of mass destruction. If the unit of prosecution under that statute is possession, then Johnson's two convictions were multiplicitous because there was only one act of possession—that is, a single, simultaneous possession of two IEDs. If, on the other hand, the unit of prosecution is the weapon, then Johnson's two convictions were not multiplicitous because there were two IEDs in his possession. We review the question of multiplicity de novo, *Cooper*, 886 F3d at 152, despite Johnson's failure to raise it at or before trial, because the government has not made, and therefore forfeits, any forfeiture argument, *see United States v. Layeni*, 90 F.3d 514, 522 (D.C. Cir. 1996).

Identifying the unit of prosecution under D.C. Code § 22-3154(a) requires us to interpret the D.C. Code, and it is the province the D.C. Court of Appeals to determine the meaning of D.C. Code provisions. *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1335 & n.3 (D.C. Cir. 2015). We thus aim "to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case." *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006). The question for us, then, is how would the D.C. Court of Appeals view the application of D.C. Code § 22-3154(a) to circumstances involving possession of two of

the same weapon, at the same time, and in the same place:  is that one violation of the statute or two?

The D.C. Court of Appeals has issued a line of decisions addressing fundamentally the same issue in closely comparable situations.  Like this case, each of those decisions addressed a statute prohibiting possession of some sort of item, and the circumstances involved a defendant's possession of more than one of the prohibited items at the same time and in essentially the same place.

In the first case, *Cormier v. United States*, 137 A.2d 212 (D.C. 1957), the defendant simultaneously carried two pistols in his pockets, and he was charged with, and convicted of, two counts of possessing a pistol without a license.  *Id.* at 213.  The D.C. Court of Appeals, however, held that he had committed only one offense, not two.  *Id.* at 217.  According to the court, "[n]othing in the statutes defining the crime of carrying a pistol and fixing the punishment discloses that Congresses intended that there be multiple prosecutions in the type of situation presented here."  *Id.*  The court observed that the "problem is doubtful," and held that it "must resolve that doubt in favor of [the defendant]."  *Id.*

The D.C. Court of Appeals later ruled the same way in *Briscoe v. United States*, 528 A.2d 1243 (D.C. 1987).  There, the defendant concurrently possessed PCP-laced marijuana in a kitchen trash bag and untreated marijuana in a bedroom.  *Id.* at 1244.  He was charged with two counts of possessing marijuana with intent to distribute it, with one count concerning the marijuana found in the kitchen and the other count concerning the marijuana found in the bedroom.  The court sought to "determine whether the Council of the District of Columbia intended to permit multiple punishments for possession of the same drug at the same time and at

approximately the same place." *Id.* at 1245. The court emphasized that "the applicable language of the statute criminalizes 'possession,' which is more appropriately described as a course of conduct than an act." *Id.* at 1246. The court held that, when the defendant's "constructive possession occurred at the same time in his apartment, multiple punishments are not authorized." *Id.*

The D.C. Court of Appeals again confronted the same sort of issue in *Bean v. United States*, 576 A.2d 187 (D.C. 1990), and again reached the same result. The defendant was found in possession of both a knife and rifle in his car, and he was charged with two counts of violating a statute barring carrying either a pistol without a license or a dangerous weapon capable of being concealed. *Id.* at 188. The court invoked the principle espoused in *Cormier* that, "in the absence of clear legislative intent, any doubt as to whether a single statute creates a single or multiple offense will be resolved against turning a single transaction into multiple offenses." *Id.* at 190 (internal quotation marks omitted). The court saw "nothing in the relevant language of the statute . . . to indicate that [multiple] convictions are allowed" in the circumstances. *Id.*

While *Cormier*, *Briscoe*, and *Bean* each ruled against multiple convictions in circumstances involving simultaneous possession of two prohibited items in the same place, the D.C. Court of Appeals subsequently reached a different conclusion in *Hammond v. United States*, 77 A.3d 964 (D.C. 2013). There, the defendant was found in possession of two rifles in his car. *Id.* at 966. Significantly, he was charged with two counts of possessing an *unregistered* firearm. The court held that "the unit of prosecution under the statute is each individual unregistered firearm." *Id.* at 967. The court emphasized that "the statute's plain language defines the unit of prosecution as '*the* firearm' that is possessed, but not validly registered." *Id.*

at 967–68 (quoting D.C. Code § 7-2502.01 (2001)). And the court explained that "the statute's clear purpose," achieved through a complex registration scheme, "is to collect information on each firearm possessed in the District of Columbia in order to be able to identify and track that firearm." *Id.* at 968.

This case is of a piece with *Cormier*, *Briscoe*, and *Bean*, and materially differs from *Hammond*. In circumstances like the ones in this case, the D.C. Court of Appeals generally asks whether "the legislature expressed a clear intention in the language of [the relevant statute] that *does* allow multiple convictions." *Bean*, 576 A.2d at 190 (discussing *Cormier*). As in *Cormier*, *Briscoe*, and *Bean*—and unlike in *Hammond*—the statute at issue in this case contains no such clear indication.

The statute reads as follows: "A person who . . . possesses a weapon of mass destruction capable of causing multiple deaths, serious bodily injuries to multiple persons, or massive destruction of property may, upon conviction, be punished by imprisonment for life." D.C. Code § 22-3154(a). That language contains no clear indication of an intention to allow multiple convictions for possession of two of the same devices in the same place at the same time. To the contrary, the possibility of a life sentence for a single act of possession raises the question whether multiple convictions for multiple weapons would serve a meaningful purpose.

If anything, the statutory language is less amenable to a conclusion that the unit of prosecution is each weapon (as opposed to each act of possession) than was the statute in *Bean* in the circumstances of that case. The law in *Bean* prohibited "carry[ing] . . . [outside the home] a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being . . . concealed." 576 A.2d

at 188–89 (quoting D.C. Code § 22-3204 (1989)). The *Bean* court rejected the idea that simultaneous possession of a firearm and a knife supported multiple prosecutions, even though the statutory text separately referenced each of those items ("pistol, without a license," on one hand, and "deadly or dangerous weapon, capable of being . . . concealed," on the other hand). Here, the statute refers generally to "a weapon of mass destruction," and that language covers both IEDs possessed by Johnson.

*Hammond* is markedly distinct for reasons emphasized by the D.C. Court of Appeals in that decision. In holding that the unit of prosecution was each firearm, *Hammond*, as noted, stressed that the statute referred to the prohibited items (unregistered firearms) with a definite article—i.e., "*the* firearm." *Hammond*, 77 A.3d at 967 (quoting D.C. Code § 7-2502.01 (2001)). The statute in this case, like those in *Cormier*, *Briscoe*, and *Bean*, contrastingly refers to the prohibited items with the indefinite article "a." *See* D.C. Code § 22-3154(a); *Bean*, 576 A.2d at 188–89; *Briscoe*, 528 A.2d at 1245; *Cormier*, 137 A.2d at 213 n.1 (same statute as *Bean*). And that textual difference embodies a fundamental difference in the statutory purpose: the object of the statute in *Hammond* was to enable identifying, tracking, and "collect[ing] information on each firearm possessed in the District of Columbia," which meant that "the unit of prosecution must be each individual non-registered firearm in order to give effect to the legislature's intent." *Hammond*, 77 A.2d at 968. There is no comparable indication in this case—nor was there in *Cormier*, *Briscoe*, or *Bean*—of a distinct legislative purpose connected to each possessed item.

The government cites legislative history indicating that the statute in this case aims "to provide for the stronger penalty allowable for this crime if the weapon found in a defendant's

possession is truly capable of an act of terrorism." Comm. On Judiciary of D.C., *Report: Bill 14-373, the "Omnibus Anti-Terrorism Act of 2002,"* at 18 (2002), https://lims. dccouncil.us/downloads/LIMS/10484/Committee_Report/B14 -0373-CommitteeReport1.pdf. But while that history indicates that the weapons covered by the statute—as a class—are capable of mass destruction, it does not indicate a separate legislative purpose connected to each distinct weapon in the manner of the registration scheme in *Hammond*. Rather, the legislative history cited by the government here resembles the legislative purpose considered in *Bean*, where the statute in question "intended to 'drastically tighten the ban on carrying dangerous weapons.'" 576 A.2d at 190 (quoting *Bruce v. United States*, 471 A.2d 1005, 1007 (D.C. 1984)). The *Bean* court concluded that the statute did not support multiple convictions for possession of two weapons at the same time and in the same place. The same conclusion obtains here.

In short, consistent with the D.C. Court of Appeals's decisions in *Cormier*, *Briscoe*, and *Bean*, one of Johnson's two D.C. law possession convictions must be vacated as multiplicitous.

## C.

Johnson also challenges the district court's decision to bar Johnson's counsel from suggesting in closing argument that Agent Campbell had tampered with evidence. We review the trial court's decision for abuse of discretion, *United States v. Borda*, 848 F.3d 1044, 1062 (D.C. Cir. 2017), mindful of the district court's broad discretion in the area and superior vantage point from which to assess the evidence, *see United States v. Hoffman*, 964 F.2d 21, 24 (D.C. Cir. 1992). "Abuse of discretion will only be found where the District Court's ruling prevented defense counsel from making an essential point."

*Borda*, 848 F.3d at 1062–63 (citing *Hoffman*, 964 F.2d at 24). While "defense attorneys must be permitted to argue all reasonable inferences from the facts in the record," counsel may not "premise arguments on evidence which has not been admitted" or "make statements as to facts not proven." *Hoffman*, 964 F.2d at 24 (alteration omitted) (quoting *Johnson v. United States*, 347 F.2d 803, 805 (D.C. Cir. 1965); then quoting *United States v. Latimer*, 511 F.2d 498, 503 (10th Cir. 1975)).

Johnson argues that, contrary to the district court's finding, the jury reasonably could have inferred that Campbell tampered with the physical evidence in his case. The evidence that Johnson believes supports that inference is: "that Agent Campbell alone disassembled the purported weapon, that he had not videotaped the disassembly, and that he had in the past been criticized by a federal court for exaggerating the state of evidence in a case, like this one, involving explosive devices." Appellant Reply Br. 15–16.

We cannot say that the district court abused its discretion in determining that "[t]here [wa]s nothing about Campbell's history, . . . nothing about the evidence in this case that indicate[d] that Agent Campbell did anything to it, put it there, planted it, changed it, did anything with it." Trial Tr. 1321:12–15, J.A. 299. The court reasonably distinguished between suggesting that Agent Campbell was untruthful, which was supported by the Kentucky judge's criticism of him, and suggesting that he had actively tampered with the evidence, which was not. The fact that Campbell disassembled the devices without videotaping himself does not support an inference of any misconduct, let alone of tampering, especially when the defense introduced no evidence that Campbell's actions in that regard deviated from standard procedure. *Cf. United States v. Stubblefield*, 643 F.3d 291, 295 (D.C. Cir.

2011) (affirming district court's refusal to permit defense counsel to argue that photo array did not conform to "best practices" when counsel had not introduced evidence establishing such practices). Additionally, all the materials needed to convert .37mm shells into IEDs were found in Johnson's home, and one of the shells was initially identified as a possible IED by someone other than Agent Campbell.

### D.

Fourth and finally, we consider Johnson's claim that his trial counsel rendered constitutionally ineffective assistance. Johnson contends that he would have accepted the government's proposed plea agreement if his counsel had informed him that Johnson's preferred defense would not be mounted at trial. Johnson and the government agree that the claim should be remanded to the district court for further proceedings. We agree as well.

"Due to the fact-intensive nature of the [ineffective-assistance-of-counsel] inquiry and the likelihood, when a defendant asserts his sixth amendment claim for the first time on direct appeal, that the relevant facts will not be part of the trial record, this court's 'general practice is to remand the claim . . .' unless 'the trial record alone conclusively shows' that the defendant either is or is not entitled to relief." *United States v. Rashad*, 331 F.3d 908, 909–10 (D.C. Cir. 2003) (citation omitted) (quoting *United States v. Fennell*, 53 F.3d 1296, 1303–04 (D.C. Cir. 1995)). Here, the trial record alone cannot resolve Johnson's claim: the existing record does not shed light on Johnson's discussions with his trial counsel about the defense Johnson wished to present or on Johnson's thinking in rejecting the government's proposed plea agreement.

15

* * * * *

For the foregoing reasons, we remand to the district court to vacate Counts One and Four, to vacate either Count Three or Count Six, and to hold further proceedings on Johnson's claim that his trial counsel rendered constitutionally ineffective assistance. We otherwise affirm the judgment of the district court.

*So ordered.*