# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 15, 2022          Decided July 7, 2023

No. 22-7046

JONES LANG LASALLE BROKERAGE, INC.,
APPELLANT

v.

1441 L ASSOCIATES, LLC, DOING BUSINESS AS 1441 L STREET
ASSOCIATES, LLC,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-03687)

*Laura H. McNally* argued the cause for appellant. With her on the brief was *Michael E. Kenneally*.

*Alexander M. Laughlin* argued the cause and filed the brief for appellee.

Before: SRINIVASAN, *Chief Judge*, MILLETT, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: Jones Lang LaSalle Brokerage, Inc. (JLL) represented both parties to an agreement to lease property in northwest Washington, D.C. Because dual representations of that kind pose inherent conflicts of interest, the District of Columbia's Brokerage Act required JLL to obtain the written consent of all clients on both sides.

JLL's client on the landlord side of the transaction, 1441 L Associates, LLC, declined to pay JLL's commission. JLL then brought this action to recover the commission. In defending against the suit, 1441 L argued that JLL, when disclosing its dual representation, failed to adhere to certain formatting specifications set out in the Brokerage Act that aim to highlight such a disclosure.

The district court granted summary judgment to 1441 L. In the court's view, JLL's failure to meet the formatting specifications described in the Act when disclosing its dual representation relieved 1441 L from having to pay JLL's commission. We conclude, however, that the Act does not invariably require adherence to those formatting specifications. Rather, the specifications go to whether the broker can gain an optional presumption that it secured the required written consent for its dual representation. Even without the benefit of that presumption, a broker can still demonstrate that it obtained the requisite written consent. We vacate and remand for an assessment of whether JLL can make that showing in this case.

I.

A.

The Brokerage Act seeks to "protect the public against incompetence, fraud and deception in real estate transactions." D.C. Code § 42-1701. Among other things, the Act addresses "dual representations," which occur when a real estate broker

represents parties on both sides of a real estate transaction. Dual representations pose inherent conflicts of interest because, when "a broker attempts to act for both sides, he is confronted with the impossible task of securing for each the most advantageous bargain possible." *Jenkins v. Strauss*, 931 A.2d 1026, 1034 (D.C. 2007) (quotation marks omitted) (quoting *Urb. Invs., Inc. v. Branham*, 464 A.2d 93, 96 (D.C. 1983)). A "broker thus may not serve both parties to a transaction unless, under certain circumstances, the parties fully and freely have consented to the dual representation." *Id.* (quotation marks omitted) (quoting *Urb. Invs.*, 464 A.2d at 96).

In accordance with those principles, the Brokerage Act allows a broker to "act as a dual representative only with the written consent of all clients to the transaction." D.C. Code § 42-1703(i)(1); *see also Jenkins*, 931 A.2d at 1033. "Such written consent . . . shall be presumed to have been given as against any client who signs a disclosure as provided in this section." D.C. Code § 42-1703(i)(1). "Such disclosure," the Act's next provision states, "may be given in combination with other disclosures or provided with other information, but if so, the disclosure must be conspicuous, printed in bold lettering, all capitals, underlined, or within a separate box." *Id.* § 42-1703(i)(2). The Act then provides that "[a]ny disclosure which complies substantially in effect" with a model disclosure form "shall be deemed in compliance with this disclosure requirement." *Id.* The model disclosure form clarifies that a broker engaged in a dual representation generally "may not disclose to either client . . . any information that has been given to the dual representative by the other client within the confidence and trust of the brokerage relationship," and confirms that the clients, "by signing," "acknowledge their informed consent to the disclosed dual representation." *Id.*

4

B.

In June 2016, 1441 L engaged JLL to secure a tenant for 1441 L's property at 1441 L Street, Northwest, in Washington, DC. Their exclusive leasing agreement authorized JLL to "cooperate with cooperating brokers, including representatives of JLL or its affiliates other than Project Team members." The agreement provided that if JLL secured a tenant, 1441 L would pay JLL a commission based on the lease's value. The agreement also incorporated a rider stating that 1441 L acknowledged receipt from JLL of an "agency disclosure required by District of Columbia law to be given" to 1441 L by JLL. J.A. 31 (capitalization altered). That disclosure was contained in an attachment to the rider, and it "substantially mirror[ed]" the Brokerage Act's model form, *see Jones Lang LaSalle Brokerage, Inc. v. 1441 L Assocs., LLC*, 597 F. Supp. 3d 64, 70 (D.D.C. 2022) (*JLL*), but the spaces on the form for the clients' and broker's names and signatures remained blank.

The team of JLL brokers representing 1441 L eventually secured a tenant for 1441 L's property. A separate team of JLL brokers represented the tenant. In December 2017, some eight months before finalization of the lease, 1441 L's managing member sent to the JLL tenant team a letter confirming that 1441 L would "recognize and compensate [JLL] as the broker for" its prospective tenant. J.A. 217. 1441 L and the tenant ultimately executed a twelve-year lease agreement.

In a provision of that lease agreement entitled "Broker," 1441 L and its tenant: memorialized that JLL was "representing and acting as the agent for both Landlord and Tenant"; "authorize[d] and consent[ed] to such dual agency"; and "waive[d] any conflict of interest which may arise as a result thereof." J.A. 114. Following execution of the lease

agreement, JLL sought payment of its commission from 1441 L, but 1441 L refused to pay the full amount.

## C.

JLL then filed this action against 1441 L. It asserted a single claim for breach of contract under District of Columbia law and sought payment of more than $750,000 in allegedly unpaid commissions.

The district court granted 1441 L's motion for summary judgment. The court accepted 1441 L's contention that JLL could not enforce 1441 L's contractual promise to pay a commission because JLL had not disclosed its dual representation in the format set forth in section 42-1703(i)(2) of the Brokerage Act. *See JLL*, 597 F. Supp. 3d at 68–72. That provision speaks of a disclosure that is "conspicuous, printed in bold lettering, all capitals, underlined, or within a separate box." D.C. Code § 42-1703(i)(2).

JLL timely brought this appeal.

## II.

We review de novo the district court's order granting summary judgment. *Jeffries v. Barr*, 965 F.3d 843, 859 (D.C. Cir. 2020). Because this case involves interpretation of the D.C. Code, we "aim 'to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case.'" *United States v. Johnson*, 4 F.4th 116, 120 (D.C. Cir. 2021) (quoting *Novak v. Cap. Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006)).

Section 42-1703(i) of the Brokerage Act addresses dual representations. It authorizes "[d]isclosed" dual representations under certain conditions. *See* D.C. Code

§ 42-1703(i) (entitled "Disclosed dual . . . representation authorized").

The provision centrally at issue in this appeal is section 42-1703(i)(2). It states in pertinent part: "Such disclosure may be given in combination with other disclosures or provided with other information, but if so, the disclosure must be conspicuous, printed in bold lettering, all capitals, underlined, or within a separate box." *Id.* § 42-1703(i)(2). For ease of reference, we will refer to the phrase "conspicuous, printed in bold lettering, all capitals, underlined, or within a separate box," *id.*, as the "formatting specifications." And we will refer to a disclosure "given in combination with other disclosures or provided with other information," *id.*, as a "non-standalone" disclosure. Under the terms of section 42-1703(i)(2), its formatting specifications apply only to non-standalone disclosures.

Here, 1441 L contends that JLL disclosed its dual representation in a non-standalone disclosure but that the disclosure did not meet the formatting specifications—i.e., it was not "conspicuous, printed in bold lettering, all capitals, underlined, or within a separate box." *Id.* The question we face is whether the Act invariably requires adherence to those formatting specifications whenever a broker discloses a dual representation in a non-standalone disclosure. If so, JLL necessarily failed to comply with the Act. If not—that is, if a broker disclosing a dual representation in a non-standalone disclosure can still meet the Act's requirements even without adhering to the formatting specifications—JLL might have complied with the Act, thereby retaining the ability to enforce its entitlement to a commission.

We conclude that the latter interpretation is correct. To see why, it is necessary to examine section 42-1703(i)(2)'s

description of the formatting specifications in the context of the neighboring provisions. The statute contains an intricate set of interrelated provisions, whose meaning and import may not immediately leap off the page.

Section 42-1703(i) provides, in relevant part:

> § 42-1703. Duties of real estate brokers, salespersons, and property managers. . . .
>
> > (i) Disclosed dual or designated representation authorized. —
> >
> > > (1) A licensee may act as a dual representative only with the written consent of all clients to the transaction. Such written consent and disclosure of the brokerage relationship as required by this section shall be presumed to have been given as against any client who signs a disclosure as provided in this section.
> > >
> > > (2) Such disclosure may be given in combination with other disclosures or provided with other information, but if so, the disclosure must be conspicuous, printed in bold lettering, all capitals, underlined, or within a separate box. Any disclosure which complies substantially in effect with the following [model disclosure form] shall be deemed in compliance with this disclosure requirement: [model disclosure form provisions]

*Id.* § 42-1703(i)(1)–(2).

The first subsection, section 42-1703(i)(1), establishes the Brokerage Act's basic requirement with respect to dual representations: that a broker "may act as a dual representative only with the written consent of all clients to the transaction." *Id.* § 42-1703(i)(1). That written consent requirement necessarily encompasses an associated disclosure obligation: a would-be dual representative could not obtain a client's written consent to a dual representation without disclosing the dual representation to which the client consents. Hence the title of section 42-1703(i): "*Disclosed* dual or designated representation authorized." *Id.* § 42-1703(i) (emphasis added). (A "designated representation" is a specific way of implementing a dual representation as described later in section 42-1703(i). *See id.* § 42-1703(i)(5)–(6).) In accordance with the recognition that consent to a dual representation necessarily requires disclosure of the dual representation, the District of Columbia Court of Appeals has observed that the Act may require a broker to provide "written notice" of a dual representation to ensure that a client's consent is "truly informed." *Jenkins*, 931 A.2d at 1034.

After the first sentence of section 42-1703(i)(1) sets out the written consent requirement, the provision's second sentence adds: "Such written consent and disclosure of the brokerage relationship as required by this section shall be *presumed* to have been given as against any client who signs a disclosure as provided in this section." D.C. Code § 42-1703(i)(1) (emphasis added). The Act thus does not categorically require a broker involved in a dual representation to obtain a signed "disclosure as provided in this section" from all clients. Instead, obtaining such a signed disclosure from a client establishes only a *presumption* that the written consent requirement has been satisfied with respect to that client.

The ensuing provision is section 42-1703(i)(2), the provision centrally at issue in this appeal. Its initial sentence, using the language we have seen, elaborates as follows on the preceding provision's establishment of a presumption of written consent "against any client who signs a disclosure as provided in this section": "Such disclosure may be given in combination with other disclosures or provided with other information, but if so, the disclosure must be conspicuous, printed in bold lettering, all capitals, underlined, or within a separate box." *Id.* § 42-1703(i)(2).

Understood in the context of the immediately preceding sentence, then, the "disclosure" addressed by that language— i.e., the disclosure introduced by the words "[s]uch disclosure" at the outset of the provision, *id.*—is the signed "disclosure as provided in this section" that gives rise to the *presumption* of written consent, *id.* § 42-1703(i)(1). In that light, the formatting specifications set out in section 42-1703(i)(2) pertain to that disclosure and to triggering that presumption. And because the formatting specifications go only to triggering the presumption, nothing in section 42-1703(i)(2) mandates adherence to the formatting specifications when a broker does not seek to take advantage of the presumption. Rather, a broker can satisfy the Act's baseline requirement of written consent to a dual representation (along with the necessarily-associated disclosure obligation) despite its nonadherence to the formatting specifications.

In short, section 42-1703(i)(1) gives a broker disclosing a dual representation on a non-standalone basis an incentive to obtain from each client a signed disclosure meeting the formatting specifications. But the choice whether to do so is left to the broker. The broker can opt to obtain a signed disclosure sufficient to trigger the presumption from all, some, or none of its clients involved. If the broker establishes the

presumption with respect to a particular client, it can ease its burden of proving in future proceedings that it obtained "truly informed" consent to the dual representation from that client. *See Jenkins*, 931 A.2d at 1034; *see also id.* (broker must "disclose fully the dual nature of the relationship" to enable "full[] and free[]" consent to a dual representation (quotation marks omitted) (quoting *Urb. Invs.*, 464 A.2d at 96)). But the Act allows for the possibility that a broker that fails to adhere to the formatting specifications—and thus fails to trigger the presumption—can still satisfy the Act's obligation to obtain written (and informed) consent to a dual representation.

In arguing that the Act requires a broker giving a non-standalone disclosure of a dual representation to adhere to the formatting specifications in *all* circumstances—not just when seeking to invoke the presumption—1441 L emphasizes that section 42-1703(i)(1) speaks of both "written consent *and disclosure of the brokerage relationship* as [being] *required* by this section." D.C. Code § 42-1703(i)(1) (emphasis added). The apparent idea is that, if that "disclosure" is "required" regardless of the presumption, then compliance with the later language stating that a non-standalone "disclosure must be conspicuous, printed in bold lettering," etc., *id.* § 42-1703(i)(2), must also be required regardless of the presumption. In other words, the argument goes, the formatting specifications must be met whenever a broker gives a non-standalone disclosure of dual representation, not just when the broker seeks to make use of the presumption.

That argument, though, mistakenly assumes that the "disclosure of the brokerage relationship" mentioned in section 42-1703(i)(1) concerns the same disclosure as the "disclosure [that] must be conspicuous" mentioned in section 42-1703(i)(2). In fact, they are different.

The "disclosure of the brokerage relationship" mentioned in section 42-1703(i)(1) refers to a distinct disclosure obligation set forth in the immediately preceding subsection, section 42-1703(h). Indeed, that subsection is entitled "Disclosure of brokerage relationship," *id.* § 42-1703(h), precisely paralleling the "disclosure of the brokerage relationship" mentioned in section 42-1703(i)(1). The "[d]isclosure of brokerage relationship" required by section 42-1703(h)—and referenced in section 42-1703(i)(1)—applies to brokerage relationships generally, not just dual representations, and calls for disclosures to any non-clients with whom a broker discusses a property. *See id.* § 42-1703(h)(1)–(2). The terms of section 42-1703(h) also reinforce the link between the disclosure it addresses and the "disclosure of the brokerage relationship" later mentioned in section 42-1703(i)(1) by expressly cross-referencing the latter subsection. *See id.* § 42-1703(h)(1) ("Further, *except as provided in subsection (i) of this section*, such disclosure shall be made in writing at the earliest practical time . . . ." (emphasis added)).

The relationship between the various provisions plays out in the following way. As an initial matter, a broker must always advise any potential client about their prospective brokerage relationship. *See id.* § 42-1703(f). And when discussing specific property with a non-client prospective buyer or seller, the broker must disclose to the non-client its brokerage relationship with a party to the transaction. *See id.* § 42-1703(h)(1); *see also id.* § 42-1703(h)(2) (similar obligation in case of non-client prospective landlord or tenant). If the broker ultimately forms brokerage relationships with clients on both sides of the transaction, it must disclose its dual representation to all clients and obtain their written consent to the dual representation. *See id.* § 42-1703(i)(1). A client's signature on the latter disclosure—labeled a "disclosure of dual

representation" in the model disclosure form, *id.* § 42-1703(i)(2) (capitalization altered)—establishes presumptions that both the "written consent" required for dual representations by section 42-1703(i)(1) and the "disclosure of the brokerage relationship" more broadly required by section 42-1703(h) "have been given as against" that client, *id.* § 42-1703(i)(1). (The latter presumption would be relevant if the broker discussed the property with a now-client before the representation began, which would have implicated section 42-1703(h)'s disclosure obligation.)

The upshot of all of this is that, contrary to 1441 L's argument, the formatting specifications described in section 42-1703(i)(2) pertain not to the broadly applicable "disclosure of the brokerage relationship" referenced in section 42-1703(i)(1) and required by section 42-1703(h), but instead to the more particularized disclosure of dual representation that, if signed, triggers the presumption set out in section 42-1703(i)(1). *See id.* Because the formatting specifications accordingly go only to the presumption, noncompliance with them, even if rendering the presumption unavailable, does not necessarily mean noncompliance with the Act. And because the district court's decision was grounded in an opposite understanding—that JLL's noncompliance with the formatting specifications when disclosing its dual representation necessarily demonstrated JLL's noncompliance with the Act— we must vacate the court's grant of summary judgment and remand for further proceedings.

On remand, JLL will have the opportunity to show that, even if it failed to adhere to the formatting specifications and thus failed to qualify for the presumption of written consent, it still fulfilled the written consent requirement by obtaining 1441 L's "truly informed" written consent to the dual representation following "full[]" disclosure of "the dual nature

of the relationship." *Jenkins*, 931 A.2d at 1034; *see* D.C. Code § 42-1703(n) (leaving "common law of agency relative to brokerage relationships in real estate transactions" unabrogated when it is consistent with the Act); *Urb. Invs.*, 464 A.2d at 96 (collecting cases). The district court can also address, if necessary, the proper remedy for any failure by JLL to comply with the Act.

\* \* \* \* \*

For the foregoing reasons, we vacate the district court's order granting summary judgment to 1441 L and remand for further proceedings consistent with this opinion.

*So ordered.*